**COMMERCIAL CREDIT CO. v. HOFFERBERT.**

Civ. A. No. 4864.

United States District Court
Maryland, Civil Division.

Oct. 24, 1950.

Berthold Muecke, Jr. (Heaton, Mules & Ireton), Baltimore, Md., for plaintiff.

Bernard J. Flynn, U. S. Atty., Norman P. Ramsey, Asst. U. S. Atty., Baltimore, Md., Theron Lamar Caudle, Asst. Atty. Gen., Andrew D. Sharpe, Fred J. Neuland, Sp. Assts. to Atty. Gen., for defendant.

CHESNUT, District Judge.

This is a federal documentary stamp tax case arising under the Internal Revenue Code, 26 U.S.C.A. § 1801, reading in part as follows: "On all bonds, debentures, or certificates of indebtedness issued by any corporation, and all instruments, however termed, issued by any corporation with interest coupons or in registered form, known generally as corporate securities, on each $100 of face value or fraction thereof, 11 cents: * * *."

The facts are stipulated. On December 30, 1947 the well-known Commercial Credit Company, a Delaware corporation having its principal executive offices in Baltimore, Maryland, entered into an elaborate formal written Agreement with The Prudential Life Insurance Company of America, for long term financing in the amount of $50,000,000. Pursuant thereto on January 1, 1948 the Insurance Company paid to the Credit Company $50,000,000, and received in acknowledgment thereof a paper denominated a "promissory note" whereby the Credit Company promised to pay to the order of the Insurance Company

$50,000,000 on January 1, 1963 with interest on the unpaid balance at the rate of 3% per annum, payable semi-annually. The note also contained the following: "This Note is issued pursuant to an Agreement dated December 30, 1947 between the Company and the Payee and is entitled to the benefits thereof".

No documentary stamp taxes were affixed to the note when issued; but subsequently the Commissioner of Internal Revenue determined that the note, construed in connection with the benefits of the written Agreement, constituted a *debenture* of the Commercial Credit Company under section 1801 above quoted, and required stamps in the amount of $55,000 to be affixed thereto. In order to avoid penalties the Credit Company affixed and cancelled stamps in the said amount and subsequently filed a petition for refund which was denied by the Commissioner on December 9, 1949, and promptly thereafter on January 26, 1950 this suit was filed by the Credit Company against the Collector at Baltimore to recover the amount so paid for stamps.

In rejecting the claim for refund the Commissioner recited some of the more important provisions of the Agreement for the benefit of the holder of the note, which were—

1. The long time period covered by the financing, as the principal of the note was not payable until January 1, 1963;

2. Acceleration of the maturity upon default in payment of interest;

3. Privilege of pre-payment of portions of the principal with proportionate abatement of interest;

4. Covenant against creating any mortgage or suffering any lien or other charges upon the assets of the Credit Company;

5. Covenant against merger or consolidation of the Credit Company and against any sale, lease or transfer of substantially all of its assets, except under certain stated conditions;

6. Agreement by the Credit Company to submit to Prudential financial statements at all reasonable times with right of inspection of properties and books;

7. Agreement at the request of Prudential and at the expense of the Credit Company, upon surrender of the note, to execute and deliver in lieu thereof "to a bank or trust company satisfactory to Prudential", an indenture providing for the issuance and delivery of debentures in such denominations and form as Prudential may specify, the indenture to embody substantially the terms, covenants, conditions and provisions of the Agreement of December 30, 1947;

8. A recital in the Agreement that it is made upon the representation of the Prudential that it is acquiring the note for the purpose of investment and not with a view to its sale. The letter from the Collector then referred to a recent decision of the Court of Appeals of the 2nd Circuit in the case of General Motors Acceptance Corporation v. Higgins, 161 F.2d 593, 595, certiorari denied 332 U.S. 810, 68 S.Ct. 112, 92 L.Ed. 388, where it was held that notes issued by the General Motors Acceptance Corporation containing some of the same provisions as those covered in the Agreement made between the Credit Company and the Insurance Company, constituted a *debenture* within the meaning of the statute; and the letter of the Commissioner concluded:

"It is the opinion of the Bureau that the instrument issued pursuant to the agreement involved in the present case creates rights and liabilities not commonly associated with promissory notes. By its terms and provisions, the instrument represents a method of financing common to debentures which is similar to that type of financing accomplished through the medium of a public issuance of investment securities under an indenture. Moreover, the instrument was issued by you to obtain capital for use in your business under conditions similar to the sale of bonds, debentures or other investment securities. The fact that the borrowing is effected through one lender rather than the general public is not material to the question here at issue. Thus, from an over-all standpoint and not based upon any particular factor or condition, it is the opinion of the Bureau

in the light of the decision in the General Motors Acceptance Corporation case, supra, that the instrument involved in the present case should be classed as a debenture. Accordingly, it is subject to the tax imposed by section 1801 of the Code, as amended.

"In view of the foregoing your claim for redemption is rejected in full."

In my opinion the decision of the Commissioner was correct, and well supported by the reasons expressed therefor. The argument of counsel for the plaintiff to the contrary is based on the contentions carefully considered and rejected by the Second Circuit in the General Motors case. As I am entirely in accord with the conclusions and reasoning of that case, I consider it would be a work of supererogation to submit a further extended discussion in support of the conclusion.

■ The argument for the plaintiff is that the question must be determined on the face of the document itself; that it is called a "promissory note" and that it must be considered by itself and not in connection with the Agreement under which it was issued, and that there is no federal stamp tax required on promissory notes, the provision therefor in the Revenue Act of 1921 having been repealed by the Revenue Act of 1924. These contentions were carefully considered and overruled in the General Motors case. After reviewing the legislative history of the repeal of the tax on promissory notes, the opinion by Circuit Judge Chase succinctly says: "This treatment of promissory notes indicates that what was repealed when the tax on such notes was eliminated was taxation which covered the notes used customarily in day to day commercial transactions of a short time credit character and not instruments, whether called notes or something else, by which a corporation obtained capital for a substantial period of time from investors for general use in its business just as it might by the sale of its bonds, debentures or similar securities. The tax on debentures was not repealed and if debentures are issued and sold it is clear that they are none the less taxable because they are called promissory notes. * * * This

appellee as the issuing corporation may within reasonably accurate descriptive limits call the instruments it issues what it pleases, but it cannot escape taxation merely by its choice of a label."

A comparison of the provisions inserted in the notes involved in the General Motors case with the provisions of the even more elaborate and formal written Agreement of the parties in this case will show that in the instant case the special provisions made for the benefit of the note are even more persuasive than those in the General Motors case for the conclusion that the note, considered in connection with the Agreement, constituted a corporate debenture of the Commercial Credit Company.

■ The main legal contention of the plaintiff is that the note must be considered by itself and not in connection with the Agreement. I consider this contention untenable. To one familiar with corporate financing, a mere reading of the elaborate protective provisions of the Agreement at once clearly shows its great importance to the lender. It is highly improbable that the loan could or would have been made on the strength of the note alone without the protective benefits of the Agreement. Indeed the note itself is clearly tied to the Agreement by its own terms by the provision that it is entitled to the benefits thereof. As the Agreement was a vital part of the transaction between the parties, it is quite legally inadmissible to disregard it for tax purposes.

Counsel for the plaintiff compares the form of the note in the instant case with that in the General Motors case, and lists a number of literal formal or numerical differences. These differences are immaterial in relation to the real question here presented which is whether the note in connection with the Agreement constituted a debenture within the taxing statute. The only difference between this case and the General Motors case that I deem worthy of notice, is that the special agreements of the parties in the latter case which led to the conclusion that the notes constituted debentures, were contained on the face of the note itself; while in the instant case the

even more elaborate protective provisions for the benefit of the noteholder were contained in a separate written Agreement referred to in the note. This seems to me to be only a literal or immaterial difference and, for the reasons already indicated, the question must be determined by a consideration of the real financial transaction as shown by both papers.

■ I have no difficulty in finding that the note read in connection with the Agreement in this case constituted a corporate debenture of the Commercial Credit Company. The term "debenture" does not have a sufficiently precise and uniform meaning in all situations to be properly classed as a term of art. In etymology and in the essentials of its meaning it imports only a written acknowledgment of an obligation. It is not essential to a debenture that it be under seal or negotiable in form or secured by a lien. In modern current use in financial circles the term is generally understood to represent an instrument denoting a corporate obligation issued for long term capital financing and described in a covering agreement or indenture, not creating a mortgage or lien on real or personal property, but nevertheless ordinarily containing certain agreements, covenants or restraints which, if not observed, would tend to prejudice the ability of the issuer to meet its obligations. The covenants and other provisions contained in the agreements in the present case are of this customary nature.

The plaintiff refers to and has inserted in the record certain rulings of the Commissioner in other cases which held under their respective facts that promissory notes secured by mortgages were not taxable. I think it unnecessary to discuss these rulings in any detail. It is sufficient to say that a reading of the particular rulings will show that the financial transactions then under consideration are very different in nature from the one involved here. Mortgage notes in ordinary real estate transactions are a well-known class of legal instruments. Corporate debentures as now commonly understood are usually not secured by a mortgage as such at all. And mortgages themselves are not subject to federal documentary stamp taxes at the present time. Apart from this the particular rulings referred to are certainly not here controlling. The question here is not whether these particular rulings were right (though it is not intended to intimate that they were not), but is whether the ruling in the instant case was legally correct.

■ Counsel for the plaintiff advances the further and separate contention that even if the note in connection with the Agreement is considered a corporate debenture, nevertheless under his construction of section 1801 it is not taxable because it is not one of the class of instruments "known generally as corporate securities". The construction here contended for is that the just quoted phrase in section 1801 modifies or qualifies the word "debentures" and therefore it is said that this debenture to be taxable must be of the class of corporate obligations known as corporate securities. The same contention was made in the General Motors case but rejected by the court where it was pointed out, 161 F.2d pp. 596, 597, that the concluding phrase in section 1801 reading " '* * * and all instruments, however termed, issued by any corporation with interest coupons or in registered form, known generally as corporate securities * * *' were added by amendment in the Revenue Act of 1918, 40 Stat. 1057. It seems obvious that this change was not to restrict prevailing taxation but was to add to what was already taxable all other instruments generally known as corporate securities provided those to which taxation was extended were issued with interest coupons or in registered form." [1] The stamp tax for corporate de-

1. It should be noted that this construction of the statute is also consistent with Treasury Regulation 71, § 113.55.

"Sec. 113.55. *Issues Subject to Tax.*— Ordinarily, a corporate instrument styled a bond, debenture, or certificate of indebt- edness is subject to the tax. However, the taxability of an instrument is not determined by the name alone but depends upon all the circumstances, such as the name, form, and terms of the instrument, etc. Hence, an instrument, however des-

bentures originated as early as 1898 while the concluding phrase just above quoted was added by the Revenue Act of 1918. The latter phrase was, therefore, not a qualification or modification of the word "debentures" but added an additional class of taxable instruments.

While the construction contended for is not correct, it is probably of interest to note that to implement his contention counsel for the plaintiff called as a witness Mr. Hobbs, Vice-President of the First National Bank of Baltimore, experienced in investment banking practice, who said that in that field the note in this case would not be classed as a corporate security; but it at once appeared that the reason for his view was one peculiar to investment bankers who by the nature of their business would be interested in selling corporate securities of much smaller denominations to their numerous clients. And it further appeared from his evidence that the note in this case when considered in connection with the Agreement was a recently developed expedient in corporate financing to save expense to the borrower by eliminating the necessity for various incidental expenses in the previously more usual type of corporate financing by more conventional debentures, in the saving of bankers' commissions, printing and engraving expenses, trustees' fees for registration and transfer of numerous bonds or debentures and other expenses incident to the registration of corporate securities with the Securities & Exchange Commission, which would not be required in the instant case. The witness also pointed out that present economic conditions with regard to low interest rates and heavy personal income taxation naturally tended to limit the market for individual investors of relatively smaller amounts while at the same time it made possible the loaning of very large sums by some comparatively few life insurance companies and some larger banks who were under constant pressure, despite lower interest rates, to keep their cash funds employed in interest productive investments.

Finally, it may be added, as an additional convincing evidence of the nature of the instant financial transaction as a corporate debenture, that one of the benefits inuring to the noteholder, the Prudential Insurance Company, was the option given to it, under certain conditions, to require that the Commercial Credit Company at its expense would, if requested by the Insurance Company, issue its formal separate debentures in such denominations as the Insurance Company should specify under cover of an indenture to a qualified trustee, containing substantially the same terms and provisions as those in the Agreement between the parties, in exchange for the surrender of the original note for $50,000,000. It occurred to me at the hearing that this was of itself a very significant provision of the Agreement, and inquiry was made whether, if the option were exercised, the new instruments so issued would also require the payment of stamp taxes. If so, possibly it could be plausibly argued that a construction should be avoided which entailed double taxation, for what was substantially one transaction. However, counsel for the defendant pointed out that no such result could occur by reason of the provision of Treasury Regulation 71 (1941 ed.) 113.56 (c), which, in interpreting section 1801, lists as examples of instruments not taxable upon issue "bonds issued in exchange for outstanding bonds of different denominations but of the same kind, of the same total face amount and of the same maturity date". It may also be noted that the Agreement in this case expressly provided that the Commercial Credit Company should pay "all out-of-pocket expenses arising in connection with this transaction, including any Federal documentary stamp taxes which may be determined to be payable in respect of the execution and delivery of any Note or Debenture issued under this Agreement. * * *"

ignated, having all the essential characteristics of a bond, debenture, or certificate of indebtedness is taxable as such. Similarly, an instrument issued with interest coupons, or with provision for registration, and coming within the class known generally as corporate securities will be held subject to the tax regardless of the name by which it may be called."

For these reasons I conclude that the Commissioner of Internal Revenue was correct in refusing the petition for refund and therefore the complaint in this case must be dismissed with costs.