

# THE ATTORNEY GENERAL
# OF TEXAS

### AUSTIN 11, TEXAS

**PRICE DANIEL**
ATTORNEY GENERAL

*Overruled by WW27[?]
where conflicts*

August 6, 1952

Hon. J. M. Falkner, Commissioner
State Department of Banking
Austin, Texas

Opinion No. V-1489

Re: Applicability of Section 7,
Article 1524a, V.C.S., re-
quiring collateralization of
Texas obligations of lend-
ing corporations, to the sub-
mitted short-term notes of
General Motors Acceptance
Corporation.

Dear Sir:

Your request for the opinion of this office is in part as fol-
lows:

"We desire the opinion of your office upon the ques-
tion as to whether or not the issuance of notes by corpora-
tions organized pursuant to the provisions of either of Sub-
sections 48, 49 and 50 of Article 1302, or Article 1303b,
Vernon's Texas Annotated Statutes, evidencing an obliga-
tion for money borrowed by such corporations for use in
the course of the corporations' business, constitutes the
sale of such notes within the meaning of the words 'sold'
or 'sale', as referred to in Section 7 of the Loan and Bro-
kerage Companies Act, (Article 1524a, Vernon's Texas
Annotated Statutes) and requiring the deposit of securities.

"This question has arisen by virtue of the operation
of the General Motors Acceptance Corporation, a foreign
corporation with permit to do business in the state of Tex-
as, under the provisions of Subsection 49, Article 1302,
whereby said corporation issues its short-term notes
for borrowing purposes to dealers of General Motors,
banks, and any other firm, institution or corporation, and
in some cases, falling into the hands of individuals by pur-
chase of such notes through banks."

We adopt the following statement contained in the letter at-
tached to your request, which sets forth the methods adopted by the
corporation in negotiating its loans, to evidence which the promissory
notes of the corporation are issued:

"GMAC raises a substantial portion of the funds it uses in conducting its business by what is called its short-term borrowing. It does such borrowing extensively and on a large scale, under promissory notes issued by it to bearer, with a maturity date ranging up to 270 days, and evidencing GMAC's obligation to pay the face amount which includes interest on the principal amount borrowed.

"In Texas as elsewhere, GMAC's short-term borrowing is from its account banks and from other banks, commercial firms and persons who see fit to place their funds with GMAC, at the interest rate then currently offered by it, under its short-term notes; some, but not all, of those firms or persons might be dealers in GM automobiles. As far as the nature of the borrowing and the form or terms of the note are concerned, there is no difference between the issuance of the short-term notes to GMAC's account banks and the issuance of those notes to others.

"Except in certain more or less scattered instances, GMAC deals directly and privately with those to whom it issues its notes, whether they volunteer to place their funds with GMAC for such notes or GMAC solicits and otherwise stimulates their interest in the investment of their funds in the notes under which it accomplishes its short-term borrowing. The exception just referred to involves the occasional case where, at the request of a bank acting for one of its customers, GMAC issues and delivers a note to the bank for the account of its customer against remittance of the latter's funds to GMAC. In no case does GMAC employ any agent or broker or pay any brokerage or other fee.

"Notwithstanding that the notes are in form and in a legal sense fully and freely negotiable, it has been the practice of the account banks and others to whom GMAC issues its notes to hold them until maturity; in the event that it were necessary or advisable for any of those holders to sell any note for the purpose of raising cash funds, GMAC prefers and makes it a fixed practice to prepay it and thus avoid negotiation of the note by the holder to someone else. . . ."

Section 7, Article 1524a, V.C.S., is in part as follows:

"All bonds, notes, certificates, debentures, or other obligations sold in Texas by any corporation* affected by

---

*Emphases throughout are supplied.

a provision of this Act shall be secured by securities
of the reasonable market value, equaling at least at
all times the face value of such bonds, notes, certifi-
cates, debentures or other obligations. . . ."

Section 12, Article 1524a, V.C.S., is as follows:

"Sec. 12. None of the provisions of this Act, ex-
cept that portion of Section 4 requiring the filing of
financial statements, shall apply to sales made by any
corporation affected by this Act, except sales by such
corporations of bonds, notes, certificates, debentures,
or other obligations issued by and that are direct ob-
ligations of the corporation selling or offering the same
for sale. The words 'bonds', 'notes', 'certificates',
'debentures', and 'other obligations', as used in this
Act, shall not be construed to cover or include notes
executed by corporations to banks and other financial
institutions for money borrowed by such corporations
for use in the usual course of its business."

The promissory notes issued by GMAC are in the customary form
of negotiable promissory notes executed to evidence a debt, except
that the notes are made payable to "bearer" instead of the name of
the lender. These notes are short-term notes, the maturity date
thereof in no case exceeding 270 days from the date of issuance,
and therefore fall within the exemptive provisions of Section 23(h),
Article 600a, V.C.S., (The Texas Securities Act), which refer to
"negotiable promissory notes or commercial paper issued in good
faith and in the usual course of carrying on and conducting the busi-
ness of the issuer, provided that such notes are commercial paper
maturing in not more than twelve (12) months from date of issue."

The fact that these evidences of short-term indebtedness
all mature in less than one year from date of issue excludes them
from the legislative definition of "borrowed capital" employed by
the corporation which is subject to taxation under the provisions of
Article 7084, V.C.S. (the Franchise Tax Statute). In Southern Realty
Corporation v. McCallum, 65 F.2d 934, 936 (5th Cir. 1933, cert. den.
290 U.S. 692), the court held in part as follows:

". . . With respect to the novel inclusion in the
measure of the tax of longtime indebtedness, it is
here made to appear that corporations had resorted
to the device of issuing an insignificant amount of
capital stock but a large amount of bonds, thus ar-
ranging for a permanent capital which would not in-
crease the tax under the former laws. The Legisla-
ture deemed that such capital, equally with that raised

by common or preferred stock, was employed in the corporate business and tended to increase it and make it profitable, and equally required protection at the hands of the state; and so ought equally to enter into the measure of the tax. This conclusion expressed in the statute of 1930 is not arbitrary and is within legislative power. The exclusion of short-time loans, that is, those for less than a year, is also not arbitrary. If such are actually repaid within the year, they have not been capital employed during the whole tax period. If renewed throughout the year, they may serve to provide working capital just as though originally for a year, but in truth they are no permanent capital, but the indulgence is at the will of the creditor and generally purchased by a high rate of interest. A line of cleavage was proper to be made at some point, and one year, the period which the tax is to cover, was not an unreasonable place to fix it. . . ."

Based upon the foregoing statutes, it seems clear that short-term indebtedness maturing in less than one year evidenced by negotiable promissory notes of the issuing corporation is considered by the Legislature to be money borrowed by the corporation for use in the usual course of its business.

As to whether the issuance and delivery of a promissory note by a borrower corporation to a lender of the money borrowed by the corporation constitutes a "sale" of such note by the corporation is answered by the holding of the U.S. Circuit Court of Appeals in Helvering v. Stein, 115 F.2d 468, 471 (4th Cir. 1940), as follows:

"The decisions of our courts seem to hold pretty uniformly that the original negotiation of commercial paper is a loan and not a sale. Schermerhorn v. Talman, 14 N.Y. 93; Stirling v. Gogebic Lumber Co., 165 Mich. 498, 131 N.W. 109, 35 L.R.A. N.S., 1106; Bank of Ashland v. Jones, 16 Ohio St. 145; McLean v. Lafayette Bank, 16 Fed. Cas. page 264, No. 8,888. The rationale of these decisions seems to be that a promissory undertaking to pay money is not property in the hands of the person who makes the promise or agreement; for obviously a person has not, and cannot have, a valid legal claim against himself in the same legal capacity. The negotiation of such paper creates for the first time a legal claim against the negotiator, so that this transaction is a negotiation and not a sale. After such a negotiation, however, a subsequent transfer of the paper may very well be, and usually is, a sale. The original negotiator here did not transfer a claim which

he already had; rather did he, by the negotiation,
create a claim for the first time."

It also seems clear that the negotiation by GMAC of the
promissory notes in question to its borrowers in the manner de-
scribed above does not constitute the "sale" of a "debenture"
within the meaning of Section 7 of the Act. In General Motors
Acceptance Corporation v. Higgins, 161 F.2d 593, 595 (2nd Cir.
1947, cert. den. 332 U.S. 810), the opinion of the court dealt with
promissory notes issued by GMAC similar in form to the notes
referred to in your request, except that "the principal was payable
on various maturity dates none of which were less than four and
one-half,nor more than five, years from the date of issue." The
question was whether such promissory notes were debentures and
therefore taxable under the Revenue Act of 1926 (26 U.S.C.A., Int.
Rev. Code, Sec. 1801). The stamp tax on promissory notes was re-
pealed in the Revenue Act of 1924, and in discussing the provision
of the revenue Act prior to the repeal of the tax on promissory
notes, the court held:

" . . . but promissory notes were never included
in the paragraph taxing bonds, debentures, and certif-
icates of indebtedness. This treatment of promissory
notes indicates that what was repealed when the tax on
such notes was eliminated was taxation which covered
the notes used customarily in day to day commercial
transactions of a short time credit character and not
instruments, whether called notes or something else,
by which a corporation obtained capital for a substan-
tial period of time from investors for general use in
its business just as it might by the sale of its bonds,
debentures or similar securities. . . ."

See also Commercial Credit Company v. Hoffervert, 93 F.Supp.
562, 565 (D. Md. 1950), defining a "debenture."

It is the opinion of this office that the negotiation of the prom-
issory notes by General Motors Acceptance Corporation in the manner
described above constitutes the borrowing of money by GMAC for use
in the usual course of its business and that the promissory notes ex-
ecuted and issued by the corporation as evidence of such borrowed
money are not "sold" within the meaning of Section 7, Article 1524a,
V.C.S.

## SUMMARY

The negotiation of promissory notes executed by
a corporation to evidence short-term indebtedness

of the corporation for money borrowed for its use in the
usual course of its business is not a "sale" of such notes
which requires the deposit of collateral security under
the provisions of Sec. 7, Art. 1524a, V.C.S.

Yours very truly,

PRICE DANIEL
Attorney General

APPROVED:

By

E. Jacobson
Reviewing Assistant

C. K. Richards
Assistant

Charles D. Mathews
First Assistant

CKR:wb:b