**STUYVESANT TOWN CORP. v. UNITED STATES.**

**No. 49770.**

United States Court of Claims.

April 7, 1953.

Eugene Meacham and Daniel O. Dechert, Washington, D. C., for plaintiff.

Joseph H. Sheppard, Washington, D. C., Ellis N. Slack, Acting Asst. Atty. Gen., Andrew D. Sharpe, Washington, D. C., on the brief, for defendant.

Before JONES, Chief Judge, and LITTLETON, WHITAKER, MADDEN and HOWELL, Judges.

LITTLETON, Judge.

The plaintiff seeks to recover documentary stamp taxes in the amount of $110,-321.20 alleged to have been erroneously collected from plaintiff on the issuance by it of approximately $100,290,000 worth of "income debenture certificates." These instruments were issued by plaintiff, a wholly owned subsidiary of the Metropolitan Life Insurance Company, to its parent corporation to evidence sums of money advanced by Metropolitan to plaintiff. The question presented is whether the "income debenture certificates" so issued are subject to the documentary stamp tax imposed

by section 1801 of the Internal Revenue Code, 26 U.S.C. (1946 Ed.) § 1801.

Plaintiff corporation was organized under the laws of the State of New York, with its principal place of business located in New York City. Pursuant to the provisions of the Redevelopment Companies Law of New York,[1] the Metropolitan Life Insurance Company, a New York corporation, caused the plaintiff corporation to be organized April 28, 1943, as a wholly owned subsidiary, for the purpose of rehabilitating and modernizing substandard and unsanitary areas in the City of New York.

The plaintiff's certificate of incorporation sets forth, inter alia, the purposes for which the corporation was to be formed; that the capital stock of the corporation should consist of ten shares of the par value of one hundred dollars each; that the corporation might issue income debenture certificates as provided in section eleven of the Redevelopment Companies Law, with interest payable only out of net earnings of the corporation that would be applicable to payment of dividends if there were no income debentures, and that mortgage indebtedness, income debenture certificates, and stock of the corporation might be retired if, as, and when, there should be funds available for amortization purposes in its treasury.

On June 1, 1943, the City of New York, the plaintiff, and the Metropolitan Life Insurance Co., entered into an agreement, pursuant to the Redevelopment Companies Law, for the undertaking of a redevelopment project of a substandard area on the Island of Manhattan. The agreement contemplated that plaintiff would clear the buildings from this area and erect therein a project known as Stuyvesant Town, consisting of apartment buildings having controlled moderate rentals. Title to the area was to be acquired to the extent necessary by the City of New York for the plaintiff, who would then reimburse the City for the cost.

The agreement is set out in part in finding 4. Among other provisions, the agreement specified that the capital structure of plaintiff would consist of not more than ten shares of capital stock of the par value of one hundred dollars per share, and income debenture certificates which should be issued in an aggregate principal amount equal to that part of the total actual final cost of the project which should exceed the par value of the capital stock. The agreement further provided that each debenture should mature by its terms January 1, 1984, and should bear interest at 4½ percent per annum. Metropolitan agreed to own all of the stock and debentures of the corporation, and during the period of local and municipal tax exemption as provided for in sections 306 and 601, not to sell, assign, or otherwise transfer any of the stock or debentures without the consent of the Board of Estimate of the City of New York.

The local tax exemption above referred to was for a period of 25 years from the date of the completion of the project, except that plaintiff might, at any time after five years from the completion of the project, terminate the exemption upon the terms and conditions set forth in section 601.

Plaintiff completed the project known as Stuyvesant Town on July 1, 1949. During the progress of the work, and in conformity with the agreement of June 1, 1943, Metropolitan advanced and loaned to plaintiff on some forty-nine different occasions varying amounts of money. These advances or loans were evidenced by a similar number of income debenture certificates issued by plaintiff to Metropolitan. These certificates were identical in form, the only differences being as to the face amount, the date of issuance, and the number in the upper left hand corner. They were on plain white paper, did not bear the seal of the corporation, did not have interest coupons attached, and were not in registered form. The form and contents

1. Chapter 2, Title 11 of McKinney's Unconsolidated Laws of New York, Sections 3401–3426 enacted by Chapter 845 of the Laws of 1942, as amended by Chapter 234 of the Laws of 1943.

of the certificates are substantially set out in finding 5.

These certificates were nonnegotiable, and could be assigned only in compliance with the terms and conditions of the agreement between the plaintiff, Metropolitan, and the City of New York.

As before stated, plaintiff is a wholly owned subsidiary of Metropolitan. The officers and directors of plaintiff are, with one exception, also officers and directors of Metropolitan. Plaintiff's assistant treasurer and manager of the project is not an officer or director of Metropolitan. The officers and directors who are common to the two corporations are paid entirely by Metropolitan, and there are no salaried employees or officers of plaintiff at the home office of Metropolitan.

The general counsel of Metropolitan is also the secretary and a director of plaintiff, and when it appeared during the course of the project that plaintiff needed money, the project manager of plaintiff would advise the general counsel of Metropolitan of that fact. The income debenture certificate book was kept in Metropolitan's vault, and the general counsel would prepare a requisition for it on receipt of a request for funds. He would then prepare the income debenture certificate in the amount of the funds required, and authorize the drawing of a check for the documentary stamps attributable to the issuance of the certificate. A letter was then sent to Metropolitan's comptroller requesting that a check be drawn for the amount involved, whereupon the general counsel, apparently acting in his capacity as secretary of plaintiff, would turn over to Metropolitan the executed debenture certificate and receive Metropolitan's check. The executed certificate was then placed in Metropolitan's vault, and the check was deposited in plaintiff's bank account in the Chase National Bank. This procedure was followed in issuing each of the 49 certificates here involved.

Prior to the issuance of any of the certificates, Metropolitan's general counsel sent a letter to the Commissioner of Internal Revenue on May 19, 1943, in which he requested a ruling as to whether the certificates would be subject to tax under section 1801 of the Internal Revenue Code. On May 31, 1943, the Commissioner replied that in his opinion they were so taxable on either of two bases, that is, as a debenture, or as a certificate of indebtedness. In accordance with the Commissioner's ruling, plaintiff paid at various times between April 30, 1945, and March 1, 1949, sums aggregating $110,321.20 for documentary stamps which were duly affixed to the certificates issued to Metropolitan.

On April 29, 1949, plaintiff filed a claim for refund of this amount, and on August 18, 1949, the Commissioner rejected the claim. See finding 10.

Sections 1800 and 1801 of the Internal Revenue Code, 26 U.S.C. (1946 Ed.), read in part as follows:

"§ 1800. Imposition of tax

"There shall be levied, collected, and paid, for and in respect of the several bonds, debentures, or certificates of stock and of indebtedness, and other documents, instruments, matters, and things mentioned and described in sections 1801 to 1807, inclusive, or for or in respect of the vellum, parchment, or paper upon which such instruments, matters, or things, or any of them, are written or printed, the several taxes specified in such sections.

"§ 1801. Corporate securities

"On all bonds, debentures, or certificates of indebtedness issued by any corporation, and all instruments, however termed, issued by any corporation with interest coupons or in registered form, known generally as corporate securities, on each $100 of face value or fraction thereof, 11 cents: * * *."

Plaintiff contends that the tax imposed by section 1801 does not apply to the income debenture certificates (1), because they are not known generally as corporate securities, and (2), because they do not bear interest coupons and are not in registered form. Defendant takes the position that, in order for section 1801 to apply, it is not necessary to the imposition of the

tax by Sec. 1800 that instruments be known generally as corporate securities, or that they bear interest coupons or be in registered form.

The evidence is clear and convincing, and defendant concedes, that the income debenture certificates issued by plaintiff are not of the type known generally to those who deal in the corporate security trade as bonds, debentures, certificates of indebtedness, or corporate securities.

In Wilkinson v. Mutual Bldg. & Sav. Ass'n, 7 Cir., 13 F.2d 997, construing a similar section in the Revenue Act of 1921, the court said, at page 998:

"  *   *   * The words, 'known generally as corporate securities,' must be held, not only by reason of the subject-matter of the section, but also by reason of the punctuation, to refer to 'bonds, debentures or certificates of indebtedness,' as well as to those instruments specifically referred to as being issued by corporations.  *   *   *"

In G.C.M. 11794, 1933 Cum.Bull., p. 425, it is said:

"The position taken by the court [in the Wilkinson case] has been followed by the Bureau. Accordingly, in order to be subject to the tax imposed by Schedule A–1 [of the Revenue Act of 1926], instruments of indebtedness must not only (1) fall within one of the four classes of instruments described in the statute, namely, (a) bonds, (b) debentures, (c) certificates of indebtedness, and (d) instruments bearing interest coupons or in registered form, but must also (2) be such as are known generally as corporate securities."

Since that time, however, the matter has been considered by other courts, and a contrary conclusion reached. The Bureau of Internal Revenue has also changed its position on the question. As we are in agreement with the later cases as showing the correct interpretation of the statute, we must decline to follow the conclusion reached in the Wilkinson case.

A construction of the statute which would require all corporate instruments to be "known generally as corporate securities" in order to be subject to the stamp tax is, we think, unjustified. We think that it is apparent from the face of the statute that Congress contemplated a stamp tax upon two classes of corporate instruments, namely, (1) bonds, debentures, and certificates issued by a corporation, which are among the ordinary and usual methods of attracting capital for the carrying on of the business of the corporation, *whether known generally as corporate securities or not,* and (2) all other instruments, however termed, bearing interest coupons or in registered form *and* known generally as corporate securities. General Motors' Acceptance Corporation v. Higgins, 2 Cir., 161 F.2d 593, certiorari denied 332 U.S. 810, 68 S.Ct. 112, 92 L.Ed. 388; In Re Follansbee Bros. Co., D.C., 42 F. Supp. 448; Commercial Credit Co. v. Hofferbert, D.C., 93 F.Supp. 562, affirmed per curiam, 4 Cir., 188 F.2d 574.

An examination of the history of the stamp tax legislation supports this conclusion. Section 1801, supra, is derived from Schedule A of the Revenue Act of 1898, 31 Stat. 940, which imposed a tax upon certain designated instruments, including bonds, debentures, and certificates of indebtedness. The phrase " *   *   * and all instruments, however termed, issued by any corporation with interest coupons or in registered form, known generally as corporate securities," was added by amendment in the Revenue Act of 1918, 40 Stat. 1057, 1135. This amendment must have been intended to increase the scope of what is now section 1801 by adding to what was already taxable, viz., bonds, debentures, and certificates of indebtedness issued by any corporation, all other instruments, however termed, issued by any corporation with interest coupons or in registered form if the instruments to which taxation was extended were known generally as corporate securities.

Treasury Regulations 71 (1941) reads in pertinent part:

"Sec. 113.50. Scope of tax.—Section 1801 imposes a tax upon the issue by any corporation of bonds, debentures, certificates of indebtedness, *and:*

*all instruments, however termed, with interest coupons or in registered form and known generally as corporate securities.* Every renewal of the above described instruments is taxable as a new issue." [Italics supplied.]

"Sec. 113.55. Issues subject to tax. —Ordinarily, a corporate instrument styled a bond, debenture, or certificate of indebtedness is subject to the tax. However, the taxability of an instrument is not determined by the name alone but depends upon all the circumstances, such as the name, form, and terms of the instrument, etc. Hence, an instrument, however designated, having all the essential characteristics of a bond debenture, or certificate of indebtedness is taxable as such. *Similarly,* an instrument issued with interest coupons, or with provision for registration, *and* coming within the class known generally as corporate securities will be held subject to the tax regardless of the name by which it may be called." [Italics supplied.]

■ The language of these regulations is consistent with our interpretation of the statute, and lends weight to the conclusion we have expressed above. The regulations should not be disregarded or overruled except for weighty reasons. Commissioner v. South Texas Lumber Co., 333 U.S. 496, 501, 68 S.Ct. 695, 92 L.Ed. 831.

■ Accordingly, we must reject plaintiff's contention that the words "with interest coupons or in registered form, known generally as corporate securities," appearing in section 1801, were intended to modify or qualify the terms "bonds, debentures, or certificates of indebtedness issued by any corporation," set forth in section 1800.

In reaching this conclusion, we have carefully considered the many cases cited by plaintiff in its briefs, but we find in them no sound reason for reaching a different result. In Fidelity Investment Association v. United States, 5 F.Supp. 19, 20, 78 Ct.Cl. 333, certiorari denied 291 U.S. 685, 54 S. Ct. 560, 78 L.Ed. 1071, the issue was whether "Special income contracts" and "Special annuity contracts", which concededly were not taxable as bonds, debentures, or certificates of indebtedness, were "known generally as corporate securities." As we found that they were not so known, we held that the tax did not apply. We find nothing in the facts of that case which requires a conclusion contrary to our decision on the facts in the present case, as applied to the language of the statute.

■ Plaintiff next contends that even if instruments can be bonds, debentures, or certificates of indebtedness although not "known generally as corporate securities," the income debenture certificates issued by plaintiff to Metropolitan are not within the intendment of section 1801. The essence of this argument is that the words used in the statute refer to instruments with essential characteristics absent in the instant case. Defendant says that the instruments were properly taxed by the Commissioner on either of two bases, that is, as debentures, or as certificates of indebtedness.

The income debenture certificates were without seal, on plain white paper, were nonnegotiable, and were assignable only with the consent of the Board of Estimate of the City of New York. Plaintiff contends that the extraordinary characteristics of the instruments place them in a class apart from and outside of section 1801. Defendant places primary reliance on General Motors Acceptance Corp. v. Higgins, supra, and Commercial Credit Co. v. Hofferbert, supra. The instruments issued by Stuyvesant were clearly more than mere evidences of debt. The income debenture certificates were intended to, and did, represent a long-term investment by Metropolitan in the Stuyvesant Town Project carried on by its wholly owned subsidiary. As such, it is believed that the decision of the Treasury Department and our conclusion herein that the instruments were subject to the stamp tax imposed by sections 1800 and 1801 are sound. Cf. United States v. Ely & Walker Dry Goods Co., 8 Cir., 201 F.2d 584.

■■ Treasury Regulations 71, promulgated in connection with the statute, do

not expressly define the terms "bonds, debentures, or certificates of indebtedness." In pertinent part, section 113.55 reads: "Hence, an instrument, however designated, having all the essential characteristics of a bond, debenture, or certificate of indebtedness is taxable as such."

We think it significant that no effort has been made to define precisely the meaning of the words used in the statute. Taxing statutes are to be construed and given effect in the light of the taxing purpose they evidence, Burnet v. Harmel, 287 U.S. 103, 53 S.Ct. 74, 77 L.Ed. 199, and it was obviously contemplated by the Congress that the statute in question should be construed as being broad and comprehensive in scope. Fidelity Investment Association v. United States, supra; Motter v. Bankers Mortgage Co., 10 Cir., 93 F.2d 778, certiorari denied 304 U.S. 568, 58 S.Ct. 1038, 82 L.Ed. 1534; Willcuts v. Investors' Syndicate, 8 Cir., 57 F.2d 811, certiorari denied 287 U.S. 618, 53 S.Ct. 18, 77 L.Ed. 537. The reach of a taxing statute whose purpose is as obvious as the present is not to be restricted by technical refinements. Raybestos-Manhattan Co. v. United States, 296 U.S. 60, 56 S. Ct. 63, 80 L.Ed. 44.

The tax imposed by Congress by the enactment of sections 1800 and 1801 was intended to apply to an infinite number and variety of transactions whereby a corporation, through the issuance of certificates and securities, obtained the necessary funds with which to carry out its corporate functions. We are of the opinion that the consequences of a statute as all-inclusive as the present one cannot be avoided merely because of the absence of a corporate seal, or because of the fact that the instruments are not printed on tinted paper with engraved borders, etc. The negotiability or assignability of corporate securities is of importance in determining their attractiveness for investment purposes, but it cannot be entirely determinative of the incidence of the stamp tax act upon the securities.

We find it unnecessary to decide whether the income debenture certificates are technically "debentures" or "certificates of indebtedness," for the reason that, in our opinion, the terms and purposes of the income debenture certificates combine to put them well within the class of investment securities which Congress intended to tax.

It accordingly follows that the action of the Commissioner in taxing the income debenture certificates was proper, and plaintiff's petition is therefore dismissed.

It is so ordered.

JONES, Chief Judge, and HOWELL, MADDEN, and WHITAKER, Judges, concur.