**GAMBLE–SKOGMO, Inc. v. KELM.**

**Civ. No. 2915.**

United States District Court, D. Minnesota,
Third Division.

June 3, 1953.

W. P. Berghuis, Minneapolis, Minn., for plaintiff.

Fred Neuland, Sp. Asst. to Atty. Gen., and Philip Neville, the then U. S. Atty., St. Paul, Minn., for defendant.

DONOVAN, District Judge.

This is an action wherein the plaintiff taxpayer seeks to recover documentary stamp taxes in the amount of $14,300. Payment of the taxes under protest, timely claim for refund and denial thereof, are admitted by defendant.

The assessment and payment of the taxes stem from defendant's ruling and contention that a certain "3¼% Promissory Note" in the sum of $13,000,000 executed by the taxpayer on December 29, 1947, and made payable to the Equitable Life Assurance Society of the United States, hereinafter referred to as Equitable, pursuant to a loan agreement between the taxpayer and Equitable, was subject to the documentary stamp tax within the meaning of Section 1801 of the Internal Revenue Code.[1]

The facts are not in dispute. On December 18, 1947, the taxpayer entered into a loan agreement with Equitable. Under the terms of the agreement the taxpayer proposed to borrow $13,000,000 from Equitable, to be evidenced by an instrument termed a "promissory note." The purpose of this loan, according to the testimony of its assistant secretary, was to pay off certain outstanding short-term loans and for operating expenses, or, as otherwise stated by the witness, to get the obligation all in one place on a long-term note, instead of the short-term loans from the various commercial banks.

The taxpayer's contention is largely predicated upon the theory that since the documentary stamp tax on promissory notes, Revenue Act 1921, § 1107, Schedule A, subd. 5, 42 Stat. 305, was repealed by Congress in the Revenue Act of 1924, § 1100, 26 U.S.C.A.Int.Rev.Acts, page 140, and was not reenacted in any of the later Revenue

1. 26 U.S.C.A. § 1801.

Acts or the Internal Revenue Code, Congress did not intend to presently impose a stamp tax on promissory notes, and that inasmuch as the instrument here involved is, according to the taxpayer's views, a promissory note, it is exempt from the stamp tax.

Taxpayer further contends that since the physical form of the "promissory note" did not have the characteristics of a corporate security, it is not subject to the documentary stamp tax because it was printed on plain paper, was not tinted, did not have engraved or lithographed borders, was not in registered form, was not numbered, was not issued in series, was not authenticated, did not have interest coupons attached, did not bear taxpayer's corporate seal, was not issued pursuant to any indenture, contained no provision for the appointment of a trustee under any indenture and was not of the size or shape of an ordinary bond or debenture.[2] In a decision as recent as April 7, 1953, the United States Court of Claims held negotiable income debenture certificates subject to documentary stamp tax.[3]

Defendant's contention is that the provisions of the agreement and the "note" are in substance and terms typical of those corporate securities which are subject to the documentary stamp tax. In this connection defendant singles out specific sections of the agreement and "note", certain ones of which are reproduced in the marginal notes.[4]

2. Taxpayer relies principally on the case of Belden Mfg. Co. v. Jarecki, 7 Cir., 192 F.2d 211. At page 213 of 192 F.2d Chief Judge Major distinguishes that case from G.M.A.C. v. Higgins, 2 Cir., 161 F. 2d 593, saying:

"While numerous circumstances differentiate the instant case from G.M.A.C., there are two which are highly significant: (1) there, the taxpayer received money from the negotiation and sale of the instruments in controversy, they were the subject of barter and sold to the highest bidder, and (2) it was recognized by each of the parties that the instruments were being purchased solely for investment and that the purchasers were engaged not in banking but in the investment business. In the instant case, there is nothing of the kind."

The instant case is similar to the G.M. A.C. case in that "the loan was being made to the taxpayer for investment purposes." See footnote 4, infra.

3. In Stuyvesant Town Corp. v. United States, 111 F.Supp. 243, 247, holding the certificates subject to the tax, Judge Littleton said:

"Plaintiff next contends that even if instruments can be bonds, debentures, or certificates of indebtedness although not 'known generally as corporate securities,' the income debenture certificates issued by plaintiff to Metropolitan are not within the intendment of section 1801. The essence of this argument is that the words used in the statute refer to instruments with essential characteristics absent in the instant case. Defendant says that the instruments were properly taxed by the Commissioner on either of two bases, that is, as debentures, or as certificates of indebtedness.

"The income debenture certificates were without seal, on plain white paper, were nonnegotiable, and were assignable only with the consent of the Board of Estimate of the City of New York. Plaintiff contends that the extraordinary characteristics of the instruments place them in a class apart from and outside of section 1801. Defendant places primary reliance on General Motors Acceptance Corp. v. Higgins, supra, and Commercial Credit Co. v. Hofferbert, supra [D.C., 93 F.Supp. 562]. The instruments issued by Stuyvesant were clearly more than mere evidences of debt. The income debenture certificates were intended to, and did, represent a long-term investment by Metropolitan in the Stuyvesant Town Project carried on by its wholly owned subsidiary. As such, it is believed that the decision of the Treasury Department and our conclusion herein that the instruments were subject to the stamp tax imposed by sections 1800 and 1801 are sound. Cf. United States v. Ely & Walker Dry Goods Co., 8 Cir., 201 F.2d 584."

4. The language of the agreement and note contained the provisions typical of this type of case, such as furnishing of financial statements, right of inspection of properties, prepayment and acceleration clauses, discharge of all taxes, assessments and charges upon income, property and claims, and covenants against creating or assuming any mortgages, pledges or liens. In addition, defendant stresses certain provisions which in substance are as follows:

Equitable represents that the loan was being made to the taxpayer for invest-

While the ruling of the Commissioner is presumptively correct,[5] the question for decision is to some extent dependent upon the facts of the particular case. Important also, as stated in the recent case of United States v. Ely & Walker Dry Goods Co., 8 Cir., 201 F.2d 584, is the problem of defining the type of instrument subject to taxation, which necessarily finds solution in the rule that taxation is concerned with substance and not with formalities. It is the substance of the transaction which a document or instrument evidences and not the label of the instrument, which controls. The form and content of the instrument as well as the circumstances and conditions of its issuance are to be construed. That opinion carefully summarized, distinguished and catagorized the two lines of decisions. Admittedly the instant case falls somewhere in between those two lines of decisions.[6] Persuaded by the reasoning of the Court in the Ely & Walker case, supra, and noting that the decision stressed the nature of the business of the lender (here an insurance company, not a bank) and the purpose of the loan (here for investment purposes) and the surrender clause (here the defendant relies on page 2 of the "Note"), the Court is of the opinion that the instrument here in question is of the type properly within the Stamp Tax Act, and the defendant's imposition of the tax is sustained.

Defendant may submit findings of fact, conclusions of law, order for and form of judgment consistent with the foregoing.

Plaintiff may have an exception.

---

ment purposes and that Equitable had no present intention of selling or disposing of the "Note" or any part thereof. [Par. 4 of Agreement.]

Equitable or the holder of any "Note" or "Notes" could, at the expense of the taxpayer, exercise an option to exchange the same for a printed "Note" or "Notes" each in such principal amount as the holder may request. [Page 2 of the "Note."]

5. See Welch v. Helvering, 290 U.S. 111, 54 S.Ct. 8, 78 L.Ed. 212. The defendant

---

relies principally on the cases of General Motors Acceptance Corp. v. Higgins, supra, 2 Cir., 161 F.2d 593, and Commercial Credit Co. v. Hofferbert, D.C., 93 F.Supp. 562, affirmed per curiam, 4 Cir., 188 F.2d 574.

6. In the Ely & Walker case, supra, Judge Riddick points out the distinguishing feature pertaining to the matter of investment, saying 201 F.2d at page 589: "The notes in the present case * * * were not sold for investment purposes."