The **H. KOBACKER & SONS COM-PANY,** Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

**KOBACKER STORES, Inc.,** Plaintiff,

v.

**UNITED STATES of America,**
Defendant.

Civ. Nos. 6953, 6954.

United States District Court
N. D. Ohio, W. D.

Sept. 28, 1954.

---

18. 112 Kan. 628, 211 P. 1117.

**212**

Marshall, Melhorn, Bloch & Belt, Toledo, Ohio, for plaintiffs.

H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe, Harlan Pomeroy, II

Sp. Assts. to the Atty. Gen., Sumner Canary, U. S. Atty., Cleveland, Ohio, Clarence M. Condon, Asst. U. S. Atty., Toledo, Ohio, for defendant.

KLOEB, District Judge.

These cases, consolidated for the purpose of trial, are for refund of documentary stamp taxes in the sum total of $2,145, paid in accordance with the provisions of Sections 1800 and 1801 of the Internal Revenue Code, 26 U.S.C.A. §§ 1800, 1801, upon the issuance of certain instruments of indebtedness by plaintiffs to the Massachusetts Mutual Life Insurance Company on June 1, 1951. Plaintiff The H. Kobacker and Sons Company is a subsidiary of plaintiff Kobacker Stores, Inc., and both concerns are engaged in the general merchandise business.

On June 1, 1951, plaintiffs delivered to an investment banking house in New York City two certain instruments of indebtedness in the amount of $1,500,000 and $450,000. In each of these printed instruments the maker promises to pay to the Massachusetts Mutual Life Insurance Company, or order, the principal amount with interest payable semi-annually at the rate of $3\frac{1}{4}\%$ per annum, the unpaid balance to be paid on June 1, 1966, all in accordance with the provisions of an agreement dated April 30, 1951, and entered into between plaintiffs and the Massachusetts Mutual Life Insurance Company.

The agreement (Plaintiffs' Exhibit 1) comprises fifteen pages of printed matter. Therein we find the following:

(2.1.) "Purpose of Issue. Subsidiary will repay all advances from the Company with approximately $420,-000 of the proceeds from the sale of its Note. The Company will use approximately $650,000 of the proceeds from the sale of its Note to reimburse corporate funds used for the purchase or redemption of all the outstanding shares of its Cumulative Preferred Stock on or before June 1, 1951 and will use the balance of the proceeds (including the amount re-

ceived from Subsidiary in repayment of the advances referred to above) for general corporate purposes."

(6.) "Representation of the Purchaser. This agreement is made with you by the Companies in reliance upon your representation to the Companies, which by your acceptance hereof you confirm, that you are acquiring the Notes for your own account for investment and not with a view to the distribution thereof, and that you have no present intention of distributing or reselling the same, subject, nevertheless, to any requirement of law that the disposition of your property shall at all times be within your own control."

(10.) "Issue of Debentures. The Company and Subsidiary, as the case may be, each agrees that it will, as soon as reasonably possible after the receipt of a written request from you, execute and deliver at its expense a trust indenture (herein called the 'Indenture') to be dated as of the date of the Company Note or Subsidiary Note, as the case may be, originally delivered to you hereunder; provided, however, that the Company or Subsidiary, as the case may be, in lieu of executing and delivering a trust indenture as herein provided, may, by written notice of its intention to prepay delivered to you within sixty days after the receipt from you of such a request, elect to prepay, * * *.

"The Indenture shall provide for the issue thereunder of the 3¼% Debentures of the Company or Subsidiary, as the case may be * * *.

"The Indenture shall be in form satisfactory to you and your counsel and shall contain appropriate provisions setting forth the substantive provisions of the Notes of the Company or Subsidiary, as the case may be, * * *."

(16.) "Exchange of Notes. At any time at the request of the holder of any Note and upon surrender of such Note for such purpose, the Company or Subsidiary, as the case may be, at its expense will issue in exchange therefor new Notes, in such denomination or denominations as may be requested, in aggregate principal amount equal to the then unpaid principal amount of such Note and substantially in the form of such Note with appropriate variations. Such new Notes shall be printed or lithographed on printed or lithographed borders, all as may be requested by the holder of such exchanged Note."

The agreement also binds plaintiffs to many conditions and restrictions, including restrictions on dividends and purchase of stock, a requirement for maintaining and insuring their property and for filing of periodic financial statements, restrictions on changing their business, incurring liability and other financing, restrictions on mortgaging, pledging or incumbering their property and assets, and on disposing of their property, consolidation and merger, on the making of loans and investments and on borrowing.

Section 1800 of the Internal Revenue Code reads as follows:

"There shall be levied, collected, and paid, for and in respect of the several bonds, debentures, or certificates of stock and of indebtedness, and other documents, instruments, matters, and things mentioned and described in sections 1801 to 1807, inclusive, or for or in respect of the vellum, parchment, or paper upon which such instruments, matters, or things, or any of them, are written or printed, the several taxes specified in such sections."

Section 1801 reads as follows:

"On all bonds, debentures, or certificates of indebtedness issued by any corporation, and all instruments, however termed, issued by any corporation with interest coupons or in registered form, known generally as corporate securities, on each $100 of face value or fraction thereof, 11 cents: * * *."

Treasury Regulation 71 (1941 ed.), Sec. 113.55, reads as follows:

"Issues Subject to Tax.—Ordinarily, a corporate instrument styled a bond, debenture, or certificate of indebtedness is subject to the tax. However, the taxability of an instrument is not determined by the name alone but depends upon all the circumstances, such as the name, form, and terms of the instrument, etc. Hence, an instrument, however designated, having all the essential characteristics of a bond, debenture, or certificate of indebtedness is taxable as such. Similarly, an instrument issued with interest coupons, or with provisions for registration, and coming within the class known generally as corporate securities will be held subject to the tax regardless of the name by which it may be called."

The sole question involved is whether the instruments executed by plaintiffs and delivered to the insurance company pursuant to the written agreement, have the essential characteristics of debentures or certificates of indebtedness within the terms and provisions of the above quoted sections.

At the conclusion of the trial on May 26, 1954, the Court referred to and analyzed certain decisions believed to be pertinent to the issues in these cases.

The case of Cleveland Allerton Hotel, Inc. v. Commissioner of Internal Revenue, 6 Cir., 166 F.2d 805, was referred to and particularly paragraph 2 of the syllabus, which reads as follows:

"Taxation is a practical matter and taxing authority may look through form to substance."

The Court also referred to the case of Gamble-Skogmo, Inc. v. Kelm, D.

C., 112 F.Supp. 872, and particularly paragraphs 1, 2 and 3 of the syllabus, which read as follows:

"1. Ruling of Commissioner that an instrument is subject to documentary stamp tax is presumptively correct.

"2. Taxation is concerned with substance and not with formalities.

"3. In determining whether instrument is subject to documentary stamp tax, it is the substance of the transaction which the instrument evidences and not the label of the instrument, which controls."

These observations, made at the conclusion of the trial, are considered pertinent at this time.

We are of the opinion that the facts in these cases are comparable to the facts in the cases of Commercial Credit Co. v. Hofferbert, D.C., 93 F.Supp. 562, affirmed 4 Cir., 188 F.2d 574; Stuyvesant Town Corp. v. United States, 111 F.Supp. 243, 124 Ct.Cl. 686, certiorari denied 346 U.S. 864, 74 S.Ct. 102; Gamble-Skogmo, Inc. v. Kelm, D.C., 112 F.Supp. 872; United States v. General Shoe Corp., D. C., 117 F.Supp. 668, and that these decisions should govern.

Plaintiffs rely chiefly on Niles-Bement-Pond Co. v. Fitzpatrick, 2 Cir., 213 F. 2d 305, decided May 5, 1954. We believe that there are substantial factual differences between that case and the cases before us.

We hold that the instruments in these cases are taxable as debentures or certificates of indebtedness within the terms of the sections hereinbefore quoted.

The complaints are dismissed with costs to the defendant.