### BELDEN MFG. CO. v. JARECKI.
No. 10398.

United States Court of Appeals
Seventh Circuit.

Nov. 5, 1951.

Otto Kerner, Jr., U. S. Atty., Chicago, Ill., Theron L. Caudle, Asst. Atty. Gen., Morton K. Rothschild, Ellis N. Slack, Virginia H. Adams, Sp. Assts. to the Atty. Gen., John A. Looby, Jr., Asst. U. S. Atty., Chicago, Ill., for appellant.

Harry B. Sutter, William G. Blood, Ralph E. Davis, Chicago, Ill., Hopkins, Sutter, Halls, DeWolfe & Owen, Chicago, Ill., of counsel, for appellee.

Before MAJOR, Chief Judge, and FINNEGAN and SWAIM, Circuit Judges.

MAJOR, Chief Judge.

Plaintiff, an Illinois corporation, on November 17, 1948, borrowed $1,000,000 from The First National Bank of Chicago (hereinafter referred to as the Bank) and as evidence thereof issued its promissory note, payable to the Bank. Plaintiff, under protest, paid a stamp tax assessed by the defendant, Collector of Internal Revenue, in the amount of $1,100. A claim for refund on the ground that the tax had been illegally and erroneously collected was filed with the defendant and rejected by the Commissioner of Internal Revenue on March 27, 1950. Action was instituted in the district court for recovery of the amount of tax so paid, which resulted in a judgment in favor of the plaintiff in the sum of $1,100, with interest and costs. From this adverse judgment defendant appeals.

■ The sole question for decision is whether the promissory note issued as evidence of plaintiff's indebtedness to the Bank was amenable to the tax imposed by Sec. 1801 of the Revenue Act, 26 U.S.C.A. § 1801. This section, so far as here material, provides for the imposition of such a tax "On all bonds, debentures, or certificates of indebtedness issued by any corporation, and all instruments, however termed, issued by any corporation with interest coupons or in registered form, known generally as corporate securities, on each $100 of face value or fraction thereof, 11 cents: * * *."

We agree with defendant's argument that the character of the instrument in question, that is, whether it is a debenture subject to tax or a note not liable for such tax, cannot be determined merely from the name or label which the parties have applied to the instrument.

The question for decision is dependent upon the particular facts of the case. Dauphin Deposit Trust Co. v. United States, 3 Cir., 80 F.2d 893, 896. The Commissioner, in denying plaintiff's claim for refund, relied upon General Motors Acceptance Corp. v. Higgins, 2 Cir., 161 F.2d 593, and, referring thereto, stated: "The Court held that the types of instruments there involved fell within a 'class apart from ordinary commercial promissory notes and into the category of debentures as that term is used in the statute in its setting with bonds, and certificates of indebtedness, to designate a type of corporate securities which does not include ordinary promissory notes.'"

Defendant in this court, as he did in the district court, relies almost entirely upon the GMAC case and Commercial Credit Co. v. Hofferbert, D.C., 93 F.Supp. 562, wherein the facts were almost identical with those in GMAC.

Plaintiff is a manufacturer of insulated copper wire and cable, with its general offices and principal place of business in Chicago. The most important raw material used in the manufacture of its products is copper, the market for which in 1948 was "tight," and plaintiff's board of directors determined that a $1,000,000 loan was advisable to protect plaintiff's requirements. For nineteen years plaintiff had been a patron of the Bank, where it maintained deposit accounts, made loans and had an approved credit standing. On November 17, 1948, plaintiff made a written application to the Bank to borrow $1,000,000. On the same date, the Bank in writing accepted the application. Also on the same date, plaintiff received the said $1,000,000 from the Bank and as evidence thereof executed and delivered to the Bank the note in controversy.

■ By the terms of the note, plaintiff promised to pay at the office of the Bank in five equal annual installments of $200,000, with interest at 2½%, or at the official discount rate for eligible paper at the Federal Reserve Bank of Chicago, plus ¾ of 1%, with a 3% maximum. The note did not bear plaintiff's corporate seal; it was not tinted; it did not have engraved or lithographed borders; it was not in registered form; it was not numbered; it was not authenticated; it did not have interest coupons attached; it was not of the size or shape of an ordinary bond or debenture. Evidence

of payments of installments of both principal and interest was by endorsement on the back of the note. The note by its terms is made subject to the provisions of the application; in fact, defendant's position is predicated in the main upon the terms of the application rather than those of the note. It is evident, we think, that the note and application must be considered together in determining the character of the transaction.

Rather than set forth the provisions of the application in detail, we shall relate those upon which defendant relies, as stated in his brief. (1) Acceleration of the maturity date of prepayment prior to such date; (2) a limitation upon the taxpayer with respect to other corporate financing and in the disposition of its assets; (3) restrictions upon the taxpayer as to the declaration of dividends and the acquisition or retirement of any of its capital stock, and in the modification of its corporate structure, by requirement that it maintain current assets equal to or in excess of $1,500,000 more than current liabilities; (4) a requirement that the taxpayer furnish the lending Bank with balance sheets and related profit and loss and surplus statements; (5) approval of the loan agreement by taxpayer's counsel as to the legality of the "note" to be issued under the application; (6) use of the proceeds of the loan for working capital and other corporate purposes; (7) the insuring of such of taxpayer's property as the Bank may request; (8) restrictions on loans or investments by taxpayer, and (9) a statement that the Bank had no "present intention" of transferring the "note."

The record in GMAC v. Higgins, 2 Cir., 161 F.2d 593, was offered in evidence and made a part of the record in the instant case. While some of the facts thus disclosed are similar to those here, others in material aspects are so dissimilar as to make that case readily distinguishable. There, the directors of the corporate taxpayer authorized a program whereby its officers were to "offer privately to not exceeding ten large investors approximately $30,000,000 long term promissory notes," for the reason that "a few large investors, life insurance companies and others, are desirous of purchasing for permanent investment substan-tial amounts of long term promissory notes." The corporation thereupon entered into negotiations with certain large investors for the issue and sale of its securities, which it designated "notes," the investors giving the company a statement that the "issuance and sale" of the notes were subject to an opinion by the taxpayer's counsel. At a later meeting, taxpayer's president reported negotiations "for sale to such investors of this corporation's promissory notes." Subsequently, the taxpayer entered into agreements with the purchasers whereby "GMAC will sell to you and you will purchase from GMAC" the notes in question.

Pursuant to these negotiations, GMAC issued eighty-four notes dated at various dates in 1935, bearing interest at 3¼%, payable at the offices of the First National Bank of New York. The notes were of the form, size and appearance of corporate securities designed for investment. They were "decorated" and printed on tinted paper with steel engraved borders. They bore the seal of the corporation and were authenticated by the comptroller. They were issued in several series and each bore a serial number. They were sold to eight different purchasers at negotiated prices—for example, the sale to New York Life Insurance Company was at a price of $101.0277. In order to assure the investor that there would be a market for the security thus purchased, taxpayer agreed, without cost to the purchaser, to exchange the notes for those of smaller denominations.

While numerous circumstances differentiate the instant case from GMAC, there are two which are highly significant: (1) there, the taxpayer received money from the negotiation and sale of the instruments in controversy, they were the subject of barter and sold to the highest bidder, and (2) it was recognized by each of the parties that the instruments were being purchased solely for investment and that the purchasers were engaged not in banking but in the investment business. In the instant case, there is nothing of the kind.

█ Plaintiff desired to borrow money and naturally went to the Bank and made application for a loan, as it had done on previous occasions. The Bank, being in the

214

business of loaning money, accommodated its customer and took its note as evidence of the loan thus made. In connection therewith, it required plaintiff to execute an application in the form of an agreement, by which certain enumerated conditions and restrictions were imposed upon the borrower in the conduct and management of its business and assets, designed no doubt to secure the loan and thereby protect the Bank. And we see nothing so strange or unusual about the terms and conditions imposed by the Bank for its protection which justifies the characterization of the note given as a debenture.

Neither are we impressed with the argument that because certain provisions contained in the application are the same as or similar to those ordinarily found in a debenture, they require that it be characterized as such. Even if such be the case, such provisions are equally compatible with the theory that the instrument in question was a note. Defendant lays much stress upon the fact that the loan was for a large amount and for a long period. Defendant states in his brief, "by the issuing of this instrument, taxpayer obtained working capital of $1,000,000 for a substantial period of time, just as it might have done by the sale of its bonds, debentures or similar securities." This may be a circumstance but, if so, it is of minor consequence. We do not think a note changes its character because it is for $1,000,000 rather than for a lesser amount, nor because it is payable over a period of five years rather than over a shorter time.

We do not know whether the loan, because of the amount involved or the time for its repayment or the terms which the Bank imposed for its protection, is unusual in the banking business. What we do know is that the plaintiff issued its own note to the Bank as evidence of its indebtedness arising from a loan made by the Bank, and that the transaction was consummated upon terms and conditions evidently satisfactory to both parties.

The findings of fact and conclusions of law as made by the district court are reported in 95 F.Supp. 539. In our view, they correctly dispose of the issue for decision. As heretofore noted, the case on its facts is distinguishable from General Motors Acceptance Corp. v. Higgins, 2 Cir., 161 F.2d 593, certiorari denied 332 U.S. 810, 68 S.Ct. 112, 92 L.Ed. 388, and likewise from Commercial Credit Co. v. Hofferbert, D.C., 93 F.Supp. 562, affirmed per curiam, 4 Cir., 188 F.2d 574, the two cases so strongly relied upon by the defendant.

The judgment appealed from is affirmed.