## UNITED STATES v. ELY & WALKER DRY GOODS CO.

### No. 14677.

United States Court of Appeals
Eighth Circuit.

Feb. 5, 1953.

Harry Marselli, Sp. Asst. to Atty. Gen. (Charles S. Lyon, Asst. Atty. Gen., Ellis N. Slack, A. F. Prescott, and Fred E. Youngman, Sp. Assts. to Atty. Gen., George L. Robertson, U. S. Atty., and William J. Costello, Asst. U. S. Atty., St. Louis, Mo., on the brief), for appellant.

George W. Simpkins, St. Louis, Mo. (William H. Charles, William C. Connett, IV, and Bryan, Cave, McPheeters & McRoberts, St. Louis, Mo., on the brief), for appellee.

Before SANBORN, WOODROUGH and RIDDICK, Circuit Judges.

RIDDICK, Circuit Judge.

On December 31, 1947, at a regular meeting of the Board of Directors of Ely & Walker Dry Goods Company, a Missouri corporation, the directors resolved that the company make a loan from the Chase National Bank of New York and the First National Bank in St. Louis in the sum of $7,500,000, to be evidenced by the company's note for $6,500,000 to the Chase National Bank, payable in eight annual installments, each installment bearing interest from the date of the note at stated rates per annum, and by its note for $1,000,000 to the First National Bank in St. Louis of like tenor and effect. The resolution authorized the president and treasurer of the company to execute the two notes described in the resolution and to incorporate in them "such additional provisions with reference to the restrictions and covenants on the part of this Company to be kept and performed by it as to said officers may seem meet and proper."

The loan was made and the notes executed and delivered as authorized by the resolution. They were identical in terms except as to the names and addresses of payees, principal amounts, and amounts of installments. In each note the company reserved the right to prepay on any interest payment date all or any part of the then unpaid principal of the note upon certain conditions, among which was that if a prepayment was made on one note a ratable prepayment would be made on the other.

The notes contain identical covenants to be kept and performed by the company until payment in full of principal and interest as follows:

1. To furnish the bank in each year a consolidated balance statement and a consolidated income and surplus account of the company and its consolidated subsidiaries and such other information regarding the financial condition of the company and its subsidiaries as the bank might reasonably request;

2. To maintain consolidated current assets in excess of the consolidated liabilities of the company and its subsidiaries of not less than $15,000,000;

3. To pay and cause each consolidated subsidiary to pay all taxes, assessments, and governmental charges upon or against the company, its subsidiaries, or its properties.

The company also agreed that until payment of the principal and interest of the notes, neither it nor any consolidated subsidiary would without the prior written consent of the bank (1) mortgage or voluntarily subject to any lien any of its property or assets "now owned or hereafter acquired;" (2) incur any obligation for moneys borrowed, or issue any notes, debentures, bonds, or other obligations having a maturity in excess of 12 months from date; (3) merge with any corporation except with a consolidated subsidiary; (4) sell or dispose of subsidiaries or its assets; (5) assume, guarantee, or otherwise become liable upon the obligation of any person, firm, or corporation other than a consolidated subsidiary, except upon endorsement of negotiable instruments for deposit or collection in the normal course of business.

Each note contains provisions whereby upon default by the company in the performance of any of its obligations or covenants contained in the note the bank might declare the note due and payable "without presentment, demand, notice or protest of any kind."

The facts material to decision are not disputed. In addition to those stated, it appears that the company had done a regular banking business with the First National Bank in St. Louis and with the Chase National Bank of New York for many years, with the latter bank for more than 30 years. Before borrowing from the banks and executing and delivering the notes, the officials of the company had decided that because of increasing business and inflationary trends the company needed the loans to carry a larger inventory and larger accounts receivable. To procure the funds needed the company decided to apply to the banks with which it had done business for many years. It did not intend to and did not sell its obligations. At the time the loan was made the charter of the corporation prohibited it from selling any bonds or from mortgaging any of its properties without the consent in writing of the holders of 90 per cent of its preferred stock. The loan from the banks was not negotiated with the officers of the investment departments of the banks. An officer of the First National Bank in St. Louis testified that the lending and investment departments of that bank were entirely separate and that the note of the company to the First National Bank was treated by the bank as a promissory note, was carried in the discount or lending department of the bank, and had been so classified by the National Bank Examiners as well as by the bank; that in the past the First National Bank had extended to the company a line of credit in excess of $1,000,000, but at the time of the loan involved in this action the amount had been reduced to $1,000,000 in order to comply with the national banking laws. The notes were printed on plain paper, were not engraved or lithographed, were not in registered form, and did not have interest coupons attached.

The Commissioner of Internal Revenue ruled that the notes given by the company to the banks for the loan were debentures within the meaning of section 1801 of the Internal Revenue Code, 26 U.S.C.A. § 1801, and subject to the stamp tax provided in that section. The company paid the tax under protest and, refund being denied, brought this action in the District Court to recover. The United States was made a defendant in the action because the claim involved less than $10,000 and the collector of internal revenue at the time of the payment of the tax no longer was in office. The District Court held that the instruments were promissory notes, were not bonds, debentures, or corporate securities within the meaning of section 1801 and were not subject to tax. The United States appeals from the judgment in favor of the company.

We agree with the District Court. The legislative history of stamp taxes in the United States shows that Congress has always placed bonds, debentures, and certificates of indebtedness on the one hand, and promissory notes on the other, in different categories, taxed at different rates. For example, the Act of June 13, 1898, 30 Stat. 448, in section 6 entitled "Adhesive Stamps", p. 451, provided for a stamp tax "in respect of the several bonds, debentures, or certificates of stock and of indebtedness, and other documents, instruments, matters, and things mentioned and described in Schedule A of this Act, or for or in respect of the vellum, parchment, or paper upon which such instruments, matters, or things, or any of them, shall be written or printed * * *." Schedule A, p. 458, entitled "Stamp Taxes" provided for a tax of five cents on each hundred dollars of face value or fraction thereof of bonds, debentures, or certificates of indebtedness of any association, company, or corporation. The fourth paragraph of the schedule, p. 459, provided for a tax of two cents on any promissory note except bank notes issued for circulation, and for each renewal of the same, for a sum not exceeding one hundred dollars; and for each additional one hundred dollars or fractional part thereof in excess of one hundred dollars, two cents. By the Act of March 2, 1901, 31 Stat. 938, the stamp tax of five cents on each one hundred dollars of face value or fraction thereof on bonds, debentures, or certificates of indebtedness was continued. This Act, as its title shows, was passed to amend the Act of June 13, 1898, and to reduce taxation thereunder. The

stamp tax on promissory notes was repealed. By the Act of October 22, 1914, 38 Stat. 745, promissory notes were again subjected to a stamp tax. Section 5 of the Act entitled "Adhesive Stamps", p. 753, reenacted the tax in respect of bonds, debentures, or certificates of stock and of indebtedness, and other documents and instruments described in Schedule A. The first paragraph of Schedule A provided a tax of five cents on each one hundred dollars of face value or fraction thereof of bonds, debentures, or certificates of indebtedness. The fourth paragraph of the schedule, p. 760, renewed the tax of two cents upon promissory notes for a sum not exceeding one hundred dollars, and at the same rate for each additional one hundred dollars or fractional part thereof.

The Revenue Act of 1917, 40 Stat. 300, reenacted in substance the provisions of the Act of 1914. Section 800 of Title VIII, "War Stamp Taxes", p. 319, levied a tax in respect of bonds, debentures or certificates of stock and of indebtedness and other documents described in Schedule A of the title. Significantly, bonds, debentures, or certificates of indebtedness were classified in subdivision 1 of Schedule A, while drafts or checks payable otherwise than at sight or on demand, and promissory notes were classified in subdivision 6 of the schedule. Schedule A of section 1100, Title XI, of the Revenue Act of 1919, 40 Stat. 1135, 1137, is as follows:

"1. Bonds of indebtedness: On all bonds, debentures, or certificates of indebtedness issued by any person, and all instruments, however termed, issued by any corporation with interest coupons or in registered form, known generally as corporate securities, on each $100 of face value or fraction thereof, 5 cents * * *.

*   *   *   *   *   *

"6. Drafts or checks (payable otherwise than at sight or on demand) upon their acceptance or delivery within the United States whichever is prior, promissory notes, except bank notes issued for circulation, and for each renewal of the same, for a sum not exceeding $100, 2 cents; and for each

additional $100 or fractional part thereof, 2 cents."

By the Revenue Act of 1924 the tax on promissory notes was repealed. The Act as now in effect appears in sections 1800 to 1807 of the Internal Revenue Code, 26 U.S. C.A. §§ 1800–1807. We are concerned here with sections 1800 and 1801 which are as follows:

"§ 1800. *Imposition of tax*

"There shall be levied, collected, and paid, for and in respect of the several bonds, debentures, or certificates of stock and of indebtedness, and other documents, instruments, matters, and things mentioned and described in sections 1801 to 1807, inclusive, or for or in respect of the vellum, parchment, or paper upon which such instruments, matters, or things, or any of them, are written or printed, the several taxes specified in such sections.

"§ 1801. *Corporate securities*

"On all bonds, debentures, or certificates of indebtedness issued by any corporation, and all instruments, however termed, issued by any corporation with interest coupons or in registered form, known generally as corporate securities, on each $100 of face value or fraction thereof, 11 cents  *  *  *."

In none of the acts levying stamp taxes has Congress attempted to define debentures, bonds, certificates of indebtedness, corporate securities, or promissory notes for the purposes of taxation. But since the rate of taxation applicable to promissory notes on the one hand, and to bonds, debentures, certificates of indebtedness, and other documents subject to taxation on the other, have been different in all the acts taxing all of them, the problem of definition has always existed. The problem is the same under acts which tax promissory notes and under acts which do not. Its solution is found in the rule that taxation is concerned with substance and not with formalities. The substance of the transaction which a document or instrument evidences and not the label of the instrument controls. The form and content of the instrument as well as the circumstances and conditions of

its issue are to be considered. The rule is recognized by the Treasury Department[1] and applied by the courts.[2] When it is kept in mind that the taxability of an instrument depends on the substance of the transaction of which it is a part, any supposed conflict between General Motors Acceptance Corp. v. Higgins, 2 Cir., 161 F.2d 593, and Commercial Credit Co. v. Hofferbert, D.C., 93 F.Supp. 562, affirmed per curiam 4 Cir., 188 F.2d 574, relied on by the United States, and Belden Mfg. Co. v. Jarecki, 7 Cir., 192 F.2d 211, and Atlanta Metallic Casket Co. v. Allen, 99 F.Supp. 104, affirmed 5 Cir., 197 F.2d 460, relied on by the company, disappears.

In General Motors Acceptance Corp. v. Higgins, long-term obligations of the corporation denominated "notes" were classified as corporate debentures within the meaning of section 1801. In Belden Mfg. Co. v. Jarecki, a long-term note of the corporation was held to be a promissory note not taxable. The cases are clearly distinguished on the facts in the opinion in the Belden Mfg. Co. case.

In General Motors Acceptance Corp. v. Higgins the directors of the corporation adopted a resolution authorizing the officers to offer for sale to private investors approximately $30,000,000 of long-term promissory notes, on the finding that a few large investors were in the market for the purchase of such securities for investment. Pursuant to this resolution the officers of the corporation began negotiations for the sale of the so-called promissory notes, resulting in separate agreements with different investors, in which the corporation agreed to sell and the purchaser agreed to purchase notes in various amounts. As

issued the notes were printed on tinted paper with steel engraved borders, were issued in series, and each bore a serial number. They were sold to different purchasers at negotiated prices, and, in order to insure their ready marketability, the corporation agreed without charge to the purchasers to exchange the notes for others of lesser denomination. The transaction in which the instruments were issued was clearly one for the sale and purchase of corporate securities. As the Second Circuit in sustaining the taxability of the instruments said, "they obviously were not merely ordinary promissory notes evidencing debts arising in the ordinary course of business." 161 F.2d at page 595.

In the Belden case the company applied to a bank with which it had an established credit rating for a loan of $1,000,000 to secure funds with which to carry a larger inventory needed in its manufacturing operations. The note was payable in annual installments over a period of five years at a stated rate of interest. At the time of its execution the company delivered to the bank an agreement containing covenants and conditions essentially the same as those incorporated in each of the notes involved in the present case. The transaction in this case was obviously one intended to create the relation of debtor and creditor, and the note was held to be exempt from taxation under section 1801.

The transaction involved in Commercial Credit Co. v. Hofferbert was in its controlling features like that involved in the General Motors Acceptance Corp., case. In December 1940 the Commercial Credit Co. entered into an elaborate agreement with the Prudential Life Ins. Co. for long-term

---

[1.] Regulations 71, Sec. 113.55. *Issues Subject to Tax.*—Ordinarily, a corporate instrument styled a bond, debenture, or certificate of indebtedness is subject to the tax. However, the taxability of an instrument is not determined by the name alone but depends upon all the circumstances, such as the name, form, and terms of the instrument, etc. Hence, an instrument, however designated, having all the essential characteristics of a bond, debenture, or certificate of indebtedness is taxable as such. Similarly, an instru-

ment issued with interest coupons, or with provision for registration, and coming within the class known generally as corporate securities will be held subject to the tax regardless of the name by which it may be called.

[2.] Royal Loan Co. v. United States, 8 Cir., 154 F.2d 556, 558; Motter v. Bankers Mortgage Co., 10 Cir., 93 F.2d 778; General Motors Acceptance Corp. v. Higgins, 2 Cir., 161 F.2d 593; Belden Mfg. Co. v. Jarecki, 7 Cir., 192 F.2d 211.

financing in the amount of $50,000,000. In the execution of the contract the Commercial Credit Co. delivered to the Prudential Ins. Co. a long-term instrument entitled "promissory note" for $50,000,000 and a written agreement embodying various conditions and covenants binding on the Commercial Credit Co. The agreement recited that the insurance company acquired the note for the purpose of investment. It also provided that on demand of the insurance company and surrender of the note the Commercial Credit Co. would deliver to a bank or trust company satisfactory to the insurance company an indenture providing for the issuance and delivery of debentures in such denomination and form as the insurance company specified. The Commissioner's determination that the note was subject to taxation under section 1801 was sustained on the authority of the General Motors Acceptance Corp. case.

In Atlanta Metallic Casket Co. v. Allen the taxpayer delivered to an insurance company its promissory note in return for a loan of $600,000 payable over a term of years and secured by a mortgage. The note was held to be not taxable.

■ The notes in the present case fall within the same classification as the instruments involved in the Belden Mfg. Co. and Atlanta Metallic Casket Co. cases. The notes were given in ordinary commercial banking transactions to secure loans of funds needed by the Ely & Walker Company in the conduct of its business. They were not sold for investment purposes. The relation created between the company and the banks was that of debtor and creditor and nothing more. The notes were not registered or numbered or issued serially. They did not bear interest coupons and were printed on plain paper. The fact that they contained agreements for prepayment, for acceleration of maturity, as well as restrictions concerning the financial and corporate operations of the borrower, designed for the protection of the lenders, is not sufficient alone to subject them to stamp taxes provided by section 1801 of the Internal Revenue Code. It is reasonable to assume that Congress in exempting promissory notes from taxation was aware that such provisions were customary in ordinary banking transactions of the character involved here.

The judgment of the District Court is affirmed.