**BIJOU THEATRICAL ENTERPRISE COMPANY, a Michigan Corporation, Plaintiff,**

**v.**

**A. M. MENNINGER, Director of Internal Revenue, Defendant.**

**Civ. A. No. 12948.**

United States District Court,
E. D. Michigan, S. D.

Dec. 30, 1954.

Robert E. McKean and Max L. Veech, Detroit, Mich., Dickinson, Wright, Davis, McKean & Cudlip, Detroit, Mich., of counsel, for plaintiff.

Frederick W. Kaess, U. S. Atty., John L. Owen and Rodney Kropf, Asst. U. S.

---

Attys., Detroit, Mich., H. Brian Holland, Asst. Atty. Gen., Andrew D. Sharpe and Arthur L. Biggins, Sp. Assts. to Atty. Gen., for defendant.

FREEMAN, District Judge.

This case is before the Court on plaintiff's motion for summary judgment under Rule 56(c) of the Federal Rules of Civil Procedure, 28 U.S.C.A. The question involved is whether a certain instrument is a debenture and therefore subject to the documentary stamp tax imposed by Sections 1800 and 1801 of the Internal Revenue Code of 1939, as amended, 26 U.S.C. §§ 1800 and 1801, or a promissory note and hence not taxable.

The pleadings and affidavits on file establish the following facts: That plaintiff, a corporation engaged in owning and operating theatres, on June 30, 1949, borrowed $1,125,000 from the National Bank of Detroit, in order to secure funds for its "corporate purposes"; that, as evidence of such indebtedness, the single instrument in question captioned "note" was executed and delivered to said bank; that the instrument was typewritten on plain, white paper, was not numbered, was not tinted, engraved, or lithographed, was not in registered form, did not carry interest coupons, was not authenticated, and did not bear plaintiff's corporate seal; and that the loan was payable to the said bank, or order, two years from the date thereof, and interest at the rate of 2½% per annum was payable quarter-annually. The instrument was subject to the terms of a letter of understanding, dated June 1, 1949, which imposed certain restrictions on the corporate and financial activities of the plaintiff. These restrictions, in substance, prevented plaintiff from selling, leasing, or permitting liens, with certain exceptions, to exist on its principal assets; from incurring or permitting to remain outstanding any other indebtedness for borrowed money; and from making certain dividend declarations and payments. In default of any of these conditions or in the payment of interest or in the event of bankruptcy or receivership, the bank had the option to declare the note due and payable immediately. Quarterly interest payments were made and endorsed on the reverse side of the instrument. Prepayment of principal in the amounts of $125,000 and $250,000 were made on December 30, 1949, and December 11, 1950, respectively, which payments were indicated on the face of the instrument. The balance of the indebtedness was paid on the due date, June 30, 1951. Plaintiff had been a customer of the bank since 1933 and had maintained substantial commercial accounts with the bank.

Under protest, plaintiff paid a tax assessment on said instrument and now sues to recover the amount of such assessment.

Insofar as pertinent, Section 1801 of the Internal Revenue Code requires a stamp tax "on all bonds, debentures, or certificates of indebtedness issued by any corporation, and all instruments, however termed, issued by any corporation with interest coupons or in registered form, known generally as corporate securities * * *".

Much litigation has centered around the question presently before the Court. One of the early cases which other Courts have both followed and distinguished is General Motors Acceptance Corp. v. Higgins, 2 Cir., 161 F.2d 593, wherein 84 instruments, denominated "notes", were held taxable. In that case, the Board of Directors of G.M.A.C. passed a resolution authorizing its officers to borrow $30,000,000 from not more than ten investors on long-term "promissory notes" and later authorized the company to "sell" such notes. Officers negotiated with various investors and actually sold the notes to the highest bidders. The instruments in that case were printed on tinted paper, each bore the corporate seal and were issued serially. There was a penalty for prepayment or redemption. They were not registered, however, nor did they bear interest coupons. To insure their ready market-

ability, G.M.A.C. agreed, without charge and at the request of the holder, to exchange the "notes" for others of smaller denominations. The Court there stated, in effect, that the label of the instrument did not control and found the transaction to be in reality a sale of corporate securities for investment purposes.

A leading case distinguishing G.M.A.C. is Belden Mfg. Co. v. Jarecki, 7 Cir., 192 F.2d 211, 213, which held the instruments in question were not taxable. In the Belden case, plaintiff, in need of working capital, applied to the bank with which it had an established line of credit for a $1,000,000 loan payable in five years. The proceeds of the loan were used to acquire inventory. The note which Belden executed was on plain, white paper, was neither numbered, engraved, nor registered, and did not carry interest coupons. The note was subject to the terms and conditions of a loan application which imposed restrictions on the corporate and financial dealings of plaintiff similar in nature to those present in the instant case. In holding the instrument in question a note, the Court stated:

"While numerous circumstances differentiate the instant case from GMAC, there are two which are highly significant: (1) there, the taxpayer received money from the negotiation and sale of the instruments in controversy, they were the subject of barter and sold to the highest bidder, and (2) it was recognized by each of the parties that the instruments were being purchased solely for investment and that the purchasers were engaged not in banking but in the investment business. In the instant case, there is nothing of the kind.

\* \* \* \* \* \*

"And we see nothing so strange or unusual about the terms and conditions imposed by the Bank for its protection which justifies the char-

acterization of the note given as a debenture.

\* \* \* \* \* \*

"We do not think a note changes its character because it is for $1,000,000 rather than for a lesser amount, nor because it is payable over a period of five years rather than over a shorter time."

The Belden case was followed by Allen v. Atlanta Metallic Casket Co., 5 Cir., 197 F.2d 460 and United States v. Ely & Walker Dry Goods Co., 8 Cir., 201 F.2d 584, 36 A.L.R.2d 969, both of which held notes of a similar character to the one in the instant case not taxable.

In the case of Atlanta Metallic Casket Co., v. Allen, D.C., 99 F.Supp. 104, 106, which was affirmed on appeal, 5 Cir., 197 F.2d 460, the Court said:

"Whether an instrument is a bond, debenture or certificate of indebtedness within the meaning of those terms as used in Section 1801 of the Internal Revenue Code is to be determined *primarily* from its form and face and external evidence is superfluous unless consideration of the form and face of the instrument leave doubt as to its proper classification." (Italics ours.)

The Court in United States v. Ely & Walker Dry Goods Co. [201 F.2d 589], supra, after discussing the Belden case, said:

"The fact that they contained agreements for prepayment, for acceleration of maturity, as well as restrictions concerning the financial and corporate operations of the borrower, designed for the protection of the lenders, is not sufficient alone to subject them to stamp taxes provided by section 1801 of the Internal Revenue Code."

In the case of Niles-Bement-Pond Co. v. Fitzpatrick, 2 Cir., 213 F.2d 305, decided by the 2nd Circuit which also decided the General Motors Acceptance Corp. case, has distinguished that case on its facts as did the Courts in the

above-cited cases, and held that instruments similar to the one in this controversy were not taxable. The Court there noted the form of the notes and the restrictions imposed by the loan agreement with the bank, and said, at page 311:

"To be sure, a bank as well as an insurance company in a sense intends to invest when it lends money, whether the transaction be called a loan, a private placement, or a public issue. *But the classic feature demanded of an investment instrument is ready marketability,* and that is what the GMAC notes had, and what the Niles-Bement notes did not have. And all the cases which have considered the matter appear to have read the General Motors case, as we do, as holding that only those instruments having the characteristics of an investment security fall within the terms of Section 1801. See, e. g., United States v. Ely & Walker Dry Goods Co., supra, 201 F.2d at pages 588–589; Belden Mfg. Co. v. Jarecki, supra, 192 F.2d at pages 213–214; Stuyvesant Town Corp. v. United States, 1953, 111 F.Supp. 243, 247–248, 124 Ct.Cl. 686.

"In contrast to what appeared in the General Motors case, the Niles-Bement transaction was initiated along traditional loan lines by application to the Loan Department of the National City Bank, with which Niles-Bement had had ordinary commercial banking relations for twenty years; the interest rate was computed strictly on the face amount of the loan; no language of purchase and sale was used; there was no requirement of a statement of investment intention, nor any provision for breakdown of the notes to promote marketability; and none of the notes were payable to bearer." (Italics ours.)

Defendant cites the case of United States v. General Shoe Corp., D.C., 117 F.Supp. 668, decided by a Sixth Circuit District Court. However, the opinion in that case fails to set forth any reasons for the conclusions therein stated, but it should be noted that each of the instruments involved in that case, among other things, contained a provision that a holder could surrender same at the expense of the borrower and receive in exchange therefor a printed note or notes in such principal amount as the holder might request. The notes in the General Motors Acceptance Corp. case contained a similar provision on which the Court in Niles-Bement placed considerable emphasis in distinguishing G. M.A.C. In the instant case, no such provision exists.

Defendant urges that a trial on the merits is necessary in order to determine to what use plaintiff put the proceeds of the loan in question and contends that whether the proceeds were used for working capital or for long-term capital improvements is a material fact in this controversy and, therefore, the case cannot properly be determined on a motion for summary judgment under Rule 56(c), Federal Rules of Civil Procedure. With this contention, the Court cannot agree.

This Court is of the opinion that the decision in the Niles-Bement-Pond case, wherein the determining factors appear to have been that the loan "transaction was initiated along traditional loan lines" and that the note lacked ready marketability, is controlling of the instant case. The element of marketability also appears to have been the determining factor in Motor Finance Corp. v. U. S., N.J. 54–2 U.S.T.C. 49,057 (July 2, 1954), wherein the Court granted the motion of plaintiff for summary judgment.

Furthermore, in answer to defendant's contention that a trial on the merits is necessary in order to bring out certain facts to aid in the characterization of the instrument in question, it is appropriate to cite United States v. Isham, 17 Wall. 496, 84 U.S. 496, 21 L.Ed. 728, wherein Mr. Justice Hunt, speaking for the Supreme Court, stated:

"The liability of an instrument to a stamp duty, as well as the amount of such duty, is determined by the form and face of the instrument, and cannot be affected by proof of facts outside of the instrument itself.

\*   \*   \*   \*   \*   \*

"It is not permissible to the courts, nor is it required of individuals who use the instrument in their business, to inquire beyond the face of the paper. Whatever upon its face it purports to be, that it is for the purpose of ascertaining the stamp duty."

See also Lederer v. Fidelity Trust Co., 267 U.S. 17, 45 S.Ct. 206, 69 L.Ed. 494; Goodyear Tire & Rubber Co. v. United States, 273 U.S. 100, 103, 47 S.Ct. 263, 71 L.Ed. 558; Willcuts v. Investors' Syndicate, 8 Cir., 57 F.2d 811.

Plaintiff's motion for summary judgment is granted and an appropriate order may be presented.