**COUNCIL PLAZA REDEVELOPMENT CORPORATION, a Corporation, Appellant,**

v.

**Thomas J. DUFFEY et al., Respondents.**

No. 54153.

Supreme Court of Missouri, En Banc.

April 14, 1969.

Merle L. Silverstein, Rosenblum & Goldenhersh, Clayton, for appellant.

Husch, Eppenberger, Donohue, Elson & Cornfeld, St. Louis, Harris, Burman & Silets, Chicago, Ill., for respondents.

Elliot William Bergfeld, Jr., St. Louis, for amicus curiae.

MORGAN, Judge.

This is an action for declaratory judgment. Defendants prevailed in the trial court and plaintiff has appealed.

Plaintiff is an urban redevelopment corporation organized under the provisions of Chapter 353, RSMo 1959, V.A.M.S. Defendants are trustees of funds available for lending if secured by real estate mortgages or deeds of trust.

Plaintiff, in its corporate capacity, acquired certain land in the City of St. Louis for development of an appropriate urban redevelopment project. It obtained from defendants a written commitment for the permanent financing of the project. The loan was to be in the amount of $5,000,000.00, at an annual interest of 6½%, payable in two hundred forty consecutive monthly installments of principal and interest, if secured by a first deed of trust on the project property. Plaintiff, in reliance upon the commitment, obtained temporary financing and completed the improvements on its land. While perfecting the permanent loan, a dispute developed between the parties as to the legality of plaintiff paying interest in excess of 6% per annum in view of the provisions of Chapter 353. A further complication arose when it was found that no title insurance company would issue a mortgage guarantee policy, as required by the commitment letter, so long as an interest rate in excess of 6% per annum was required. By stipulation the parties have mutually agreed: (1) that current rates of interest on real estate loans are in excess of six percent, and (2) that the rate of interest to be charged on this permanent loan will be the lesser of (a) 6½% as set forth in the commitment letter or (b) the highest lawful rate plain-

tiff can pay under the provisions of Chapter 353. We are asked to determine the latter, and we find that in so doing a justiciable controversy will be resolved. City of Joplin v. Jasper County, 349 Mo. 441, 161 S.W.2d 411. In addition, one other preliminary observation has been made. The disputed one-half percent per annum interest on the contemplated loan over a twenty-year period makes a differential of approximately $250,000.00. No prepayment provision authorized could reduce the amount in controversy to a sum less than $15,000.00. Jurisdiction is in this Court.

■ The General Assembly, acting under the authority of Article VI, Section 21, and Article X, Section 7, of the 1945 Constitution of Missouri, V.A.M.S., enacted Chapter 353. The obvious objective was to involve private enterprise in the monumental task of eliminating urban blighted areas and the inevitable social ills flowing therefrom. This introduction of the private sector of the economy into activities generally recognized as governmental functions was recently subjected to a multiple pronged attack in Annbar Associates v. West Side Redevelopment Corporation, Mo., 397 S.W.2d 635, and this Court, en Banc, upheld the constitutionality of the challenged provisions of Chapter 353 in a most comprehensive and definitive opinion by Judge Henley. See also State on Inf. of Dalton, Attorney General v. Land Clearance for Redevelopment Authority of Kansas City, Mo., 364 Mo. 974, 270 S.W.2d 44, and Land Clearance for Redevelopment Authority of City of St. Louis v. City of St. Louis, et al., Mo., 270 S.W.2d 58.

■ As somewhat of a sequel to the cases just cited, the issue here drawn creates one limited question, i. e., does Section 353.030(10) establish six percent per annum as the maximum rate of interest payable by an urban redevelopment corporation on any indebtedness created by it? We necessarily set out all provisions of Chapter 353, omitting titles, pertinent to that question and mention that the terminology used was designed to outline the mandatory provisions of such a corporation's "articles of agreement."

Section 353.020(6): " 'Mortgage' shall mean a mortgage, trust indenture, deed of trust, building and loan contract, or other instrument creating a lien on real property, to secure the payment of an indebtedness, and the indebtedness secured by any of them."

Section 353.030(10): "A provision that in the event that income debenture certificates are issued by the corporation, the owners thereof shall have the same right to vote as they would have if possessed of certificates of stock of the amount and par value of the income debenture certificates held by them. The articles may provide for the retirement of income debenture certificates or preferred stock of the corporation as and when there shall be funds available in the treasury of the corporation from the receipt of amortization or sinking fund in installments for that purpose. *Interest shall not be paid by the corporation upon such income debenture certificates or upon any bonded or other debt of the corporation in excess of six per cent per annum.*" (Emphasis added.)

Section 353.030(11): " * * * that the stockholders of the corporation shall when they subscribe to and receive the stock thereof, agree that the net earnings of the corporation shall be limited to an amount not to exceed eight per cent per annum of the cost to such corporation of the redevelopment project including the cost of the land, or the balances of such cost as reduced by amortization payments; provided, that the net earnings derived from any redevelopment project shall in no event exceed a sum equal to eight per cent per annum upon the entire cost thereof. Such net earnings shall be computed after deducting from gross earnings the following:

(a) All costs and expenses of maintenance and operation;

(b) Amounts paid for taxes, assessments, insurance premiums and other similar charges;

(c) An annual amount sufficient to amortize the cost of the entire project at the end of the period, which shall be not more than sixty years from the date of completion of the project * * *"

Section 353.100. "No urban redevelopment corporation shall pay any interest on its income debentures or dividends on its stock during any dividend year unless there shall exist at the time of such payment no default under any amortization requirement with respect to its indebtedness, *nor* unless all accrued interest, taxes and other public charges shall have been duly paid or reserves set up for the payment thereof, and adequate reserves provided for depreciation, obsolescence and other proper reserves."

Section 353.150. "1. Any urban redevelopment corporation may borrow funds and secure the repayment thereof by mortgage which shall contain *reasonable amortization provisions* and shall be a lien upon no other real property except that forming the whole or a part of a single development area. (Emphasis added.)

"2. Certificates, bonds and notes, or part interest therein, or any part of an issue thereof, which are secured by a first mortgage on the real property in a development area, or any part thereof, shall be securities in which all the following persons, partnerships, or corporations and public bodies or public officers may legally invest the funds within their control: * * *"

Directing our attention to the ultimate problem, we find only one direct reference to "rate of interest" in Chapter 353. It is the last sentence of Section 353.030(10) which we, again, set out—"Interest shall not be paid by the corporation upon such income debenture certificates or upon any bonded or other debt of the corporation in excess of six per cent per annum." The parties commendably have focused their arguments on the proper interpretation of this one sentence, but, even though each has considered it as grammatically written and in the context of not only this specific section but also the entire chapter, they have reached directly opposite conclusions. Since a matter of interpretation is involved, fairness demands that we recognize the approach to the solution used by all parties. With every effort being made to preserve the theory of their arguments, we outline those presented.

Plaintiff (borrower) seeks to sustain its position primarily upon what it calls the "clear language of the statute itself." It is argued that the phraseology used is not cryptic nor are the words susceptible of duplicitous interpretation; and being clear and unambiguous, the language must be given its full effect. Stated otherwise, it contends this Court "must give effect to the statute as it is written * * *" It is submitted that the key word used is "debt," because it is the specific thing upon which the restrictive six percent interest limitation is imposed. From this premise, plaintiff suggests the loan contemplated will certainly create a debt of the corporation whether the word "debt" itself is accepted within the connotation of its dictionary definition or its plain and everyday meaning. Further argument is made that this interpretation of Section 353.030(10) is consistent with the other sections quoted. Significance is placed on the wording of Section 353.150(1) in that it is the " * * * mortgage which shall contain reasonable amortization provisions," as distinguished from the debt itself. Since a mortgage *debt* is not accorded any different treatment than any other debt, obviously Section 353.030(10) is applicable. For accuracy we quote plaintiff's contention on another point. It is—" * * * paragraph 2 of Section 353.150 treats as one general group all 'certificates, bonds and notes' which are secured by a first mortgage on the redevelopment property. At the same

time, Section 353.030(10) specifically mentions any 'bonded or other debt' as being subject to the six per cent interest limitation. Hence it is obvious that the mere fact that a debt is secured by a first mortgage does not exempt it from the six per cent limitation; otherwise, the 'bonded' debt (which the legislature obviously contemplated as possibly being secured by a first mortgage) would not have been specifically mentioned in Section 353.030(10)." Further argument is made that plaintiff's position is consistent with the intent of the legislature because of the "favored treatment" given an urban redevelopment corporation, e. g., by Section 353.130 it is given the power of eminent domain, by Section 353.110 it enjoys a ten-year exemption from real property taxation on the improvements made and by Section 353.150(2) its certificates, bonds and notes are made lawful investments for fiduciaries and others therein designated. In return for the powers and privileges granted, plaintiff contends it was the legislative intent to limit the potential profits of all associated therewith—the net earnings of the corporation to eight percent per annum of the project cost [Section 353.030(11)] and earnings or interest on corporate obligations to six percent per annum [Section 353.030(10)]. Plaintiff then seeks to enhance the logic of its argument by suggesting that absent a limitation on the rate of interest payable, the corporation could siphon off surplus profits to favored lenders by the use of excessive interest rates. This tactic, if practiced, could defeat the effect of Section 353.030(11) (c) which provides that any net earnings above eight percent per annum are payable to the city.

Defendants (lender) argue just as forcibly that Chapter 353 does not place any restrictive limit on the rate of interest payable on the real estate loan in question. Two basic points are submitted. They are: (1) "The Legislature intended urban redevelopment corporations to serve as a meaningful participant in the combatting of urban blight. Limiting the interest rate payable on real estate loans to six percent would nullify the effectiveness of such corporations." (2) "Section 353.030(10) was intended and is to be construed as imposing a six percent interest limitation only on what are commonly known as corporate debt securities." Defendants emphasize that we recognized this legislative intent in the *Annbar* decision, but will now prevent its fulfillment unless we conclude that there is no limitation on the rate of interest payable on the instant loan. They submit that the only limitation is that found in Section 353.150(1) wherein it provides that the mortgage contain "reasonable amortization provisions," and that it was the means whereby allowance was made for variations in the money market; that the definition of "mortgage" in Section 353.020(6) includes both the security instrument and the indebtedness secured, so the sole limitation of "reasonableness" applies also to the interest rate. In connection with their contention that Section 353.030(10) imposes its interest limitations only on debts commonly designated as corporate debt securities, defendants argue their position must be sustained when the last sentence of 353.030(10) is read in relation to the other provisions of this section as well as other sections of Chapter 353. For instance, "Subparagraph (10) deals with corporate capitalization, providing voting rights to the owners of income debenture certificates and for the retirement of such certificates or preferred stock. It is clear that the last sentence of this subparagraph is intended to relate to the same subject matter covered in its first two sentences, income debenture certificates, preferred stock and similar forms of corporate securities * * *" While considering the last sentence of this subparagraph, we are asked to apply the standards of "ejusdem generis" and find that the words "other debt" are general but when preceded by an enumeration of a particular class of things, the general words should be construed to apply only to things of the same general nature or class as those enumerated. Thus, it is argued, the term "other debt" means

other forms of capitalization similar to income debenture certificates and classified as true corporate securities. Defendants submit that the legislature was aware of this distinction in light of Section 353.100 prohibiting payment of interest on income debentures or dividends on stock unless provision had been made for all amortization requirements. United States v. Leslie Salt Co., 350 U.S. 383, 76 S.Ct. 416, 100 L.Ed. 441, and United States v. Ely & Walker Dry Goods Co., 8 Cir., 201 F.2d 584, 36 A.L.R.2d 969 are cited as authority for the classification of debts as made by defendants. As a final argument, they contend Section 353.030(11), subsections (a), (b) and (c), (the method by which net earnings of the corporation are to be computed) prevent any possibility the participants might drain off profits and avoid paying a share to the city, because "in computing net earnings no deduction is allowed for interest payments so that all interest payments must be made from net earnings * * *"

Obviously the parties have exhausted most every approach to a proper construction of the statutory provisions in question. However, in an effort to avoid confusion, we first reject two specific arguments submitted as untenable and clearly erroneous. Plaintiff's assertion the definition of "Mortgage" established in Section 353.020(6) does not include the "debt" itself is incorrect; because this subsection, after listing those legal instruments to be considered as a mortgage, then brings within the definition "the indebtedness secured by any of them." Defendants' last argument, which suggests Section 353.030 (11), (a), (b) and (c), has a built-in safeguard against excessive interest rates defeating any chance of the city participating in profits, is based on an inaccurate reading of this section. Briefly, "net earnings" are computed after those items of expense listed in subparagraphs (a), (b) and (c) are deducted from "gross earnings." Item (c) includes interest and clearly is not a later deduction to be taken from "net earnings" as suggested.

Of necessity, we add our interpretation of the statutory provisions in question. As mentioned, the only direct reference to "rate of interest" payable is found in the last sentence of subparagraph (10) of Section 353.030. It very clearly in plain and unambiguous language declares that the corporation can not pay interest in excess of six percent upon "such income debenture certificates or upon any bonded or other debt" it might create. The words "other debt" are given no specific limitation, and absent some compelling reason to the contrary, must be accepted as written. It has been called a cardinal rule of statutory construction that words in common use are to be construed within the limits of their natural, plain and ordinary meaning. Bellerive Investment Co. v. Kansas City, 321 Mo. 969, 13 S.W.2d 628, 638; Vol. 26, Mo.Dig., Statutes, § 188. We look to defendants' argument that a proper application of the doctrine of "ejusdem generis" will reach a different result. In doing this, we ignore for the moment all authority that has declared that the "rule or doctrine" is not an invariable rule of construction but a guide in determining the legislative intention only when such intention is not clear. State ex inf. McKittrick v. American Colony Ins. Co., 336 Mo. 406, 80 S.W. 2d 876, 885. The language in question is "other debt" and is the general wording to be affected by the rule. Taking it from the last sentence of Section 353.030(10), we find the next reference is to a "bonded" debt. Bonds are listed in subparagraph 2 of Section 353.150. This is the same section defendants contend only requires "reasonable amortization provisions" and has no restriction on the rate of interest. With this approach there would be no limit reference bonded indebtedness, but to the contrary, we find bonded debt restricted to a six percent rate specifically by Section 353.-030(10). So the term "reasonable amortization provisions" does not remove the restrictive rate as to bonds. This leaves one other debt—"income debenture certificates"—listed in the entire sentence. It would be questionable if this one item re-

maining properly could be called an enumeration of specifics as contemplated by the rule. Another fact must be considered. The three terms used are separated by the disjunctive "or" which in its ordinary sense marks an alternative "which generally corresponds to the word 'either.'" Crawford, Statutory Construction, § 188. Admittedly, courts have reluctantly interpreted "or" to mean "and" to avoid an absurd result and find a legislative intention which was not otherwise obvious. Dodd v. Independence Stove and Furnace Co., 330 Mo. 662, 51 S.W.2d 114, 118; Hurley v. Edison, Mo., 258 S.W.2d 607, 608. However, we do not feel the application of the rule helpful in this instance, and will accept the plain and unambiguous terms used in the sentence in their ordinary sense unless further arguments of defendants are convincing that such a result is repugnant to other provisions in Chapter 353. It is argued that subparagraph (10) generally refers to income debenture certificates and preferred stock and necessarily the last sentence therein must apply to such corporate obligations. We are unable to draw that conclusion with such certainty. In looking at other sections of Chapter 353, it is readily seen that other sections are not so precisely limited, e. g., subparagraph (11) (c) places a time limitation on the plan to a term of sixty years, and then continues to refer to matters only generally related thereto— authority to establish reserves for maintenance of net earnings of the corporation at a constant level, and provisions for future reductions of rentals. Neither do we make the same deduction as defendants from a reading of Section 353.100. It provides only that those having voting rights, income debenture holders and stockholders, as active participants in management first provide for payments due creditors not controlling corporate decisions. Defendants' effort to distinguish debts listed in subparagraph (10) from those that might be secured by a mortgage fails when it is seen that Section 353.150, providing for secured obligations, in subparagraph (2) specifically refers to "certificates, bonds and notes, or part interest therein * * *"

We necessarily conclude that the answer to the question presented is: an urban redevelopment corporation formed under the provisions of Chapter 353 can not legally pay interest at a rate in excess of six percent per annum on any of its corporate obligations.

Lastly, we recognize the arguments submitted as amicus curiae by parties acting as brokers for lending institutions. Basically, it is submitted that the "prime rate" on commercial loans is now seven percent, and that if we reach the decision as now made, private capital can not continue to participate in such worthy projects. This is, in fact, the basic underlying theme of defendants' argument. However, it is not our duty to deny or avoid the accuracy of this statement, nor could we legally design our decision to avoid the consequences feared, when the legislative language used demands the conclusion herein reached. Further, we are not unaware that it is public knowledge that the "prime rate" of interest is presently seven and one-half percent. Applying the argument to other provisions, it is probably true that the eight percent limitation on net corporate earnings will no longer be, with its many contingencies, an attractive investment. Nevertheless, our conclusion is consistent with the statutory language used as well as the apparent intent of the legislature to regulate private interests that are authorized to act in at least what could be classified as a quasi-governmental capacity. This law was enacted in 1945 at a time when interest rates were in the range of four or five percent, and the rates provided were sufficiently liberal to attract lenders. If such rates are now unrealistic in view of rising interest rates in the current market, the remedy rests in the legislative wisdom of the General Assembly.

The judgment of the trial court is reversed and it is directed to enter its declaratory judgment decreeing that Section

353.030(10) applies to the first mortgage loan in question, and that plaintiff can not lawfully pay defendants any interest in excess of six percent per annum.

All concur.